540 F.2d 713
 1976-2 Trade Cases 61,005
 AZALEA DRIVE-IN THEATRE, INC., and Twin Drive-In Theatre,
Inc., Virginia Corporations, Appellees,
v.
Burton H. HANFT, Individually, and d/b/a Sargoy, Stein and
Hanft (a Partnership), formerly known as Sargoy &
Stein, Attorneys, et al., Appellants.
 No. 75-1504.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1975.
Decided July 26, 1976.
 
 Stanley E. Sacks, Norfolk, Va. (William P. Williams, Girard C. Larkin, Jr., William L. Perkins, III, Sacks, Sacks & Tavss, and Louis H. Cohn, Norfolk, Va., on brief), for appellees.
 Lewis T. Booker, Richmond, Va. (Benjamin C. Ackerly, Hunton, Williams, Gay & Gibson, Richmond, Va., Paul Martinson, Seymour M. Peyser, Janet P. Kane, David G. Richenthal, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, and Donald F. Turner, Cambridge, Mass., on brief), for appellants.
 Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.
 HAYNSWORTH, Chief Judge:
 
 
 1
 In this civil antitrust action judgment was entered upon the verdict of a jury in favor of the plaintiffs of $100,000 actual damages, trebled under the provisions of 15 U.S.C.A. § 15 to $300,000. In entering the judgment, the district court declined to apply the doctrine of collateral estoppel to foreclose the claim, concluding that in the previous litigation in the state court the basic factual dispute had not been settled. We disagree and reverse.
 
 
 2
 The nine motion picture distributors, representing seventy-five per cent of the industry, leased moving pictures to theatres throughout the country under rental agreements providing for a payment of a percentage of the theatre's box office receipts to the distributor. The agreements authorized the distributor to make periodic inspections and to audit the books of the theatre in order to insure that the theatre is not underrepresenting box office receipts. The distributors employed the law firm of Sargoy, Stein and Hanft to conduct the required investigations.
 
 
 3
 Philip Kornfeld, an accountant employed by the Sargoy firm, undertook an investigation of the plaintiff Azalea Drive-In Theatre. He found that the reporting was consistent with the books maintained by Azalea, but he found other evidence from which the defendants estimated that there had been underdisclosure and underreporting by as much as $240,000. Azalea's representatives insisted the books were accurate. After extensive negotiations, representatives of Azalea executed and delivered a promissory note for $70,000 in settlement of the controversy.
 
 
 4
 The first payment due on the note was never made, and a suit was filed in a state court to recover on the instrument. Azalea answered setting forth three affirmative defenses, (1) that the note was given without consideration, (2) that it was executed and delivered by Azalea's president, Ernest Price, under duress, he allegedly having been threatened by Kornfeld with a group boycott, or that they would deal with him on less favorable terms than others if he did not, and, (3) the general allegation that the note was obtained in violation of the antitrust laws of the United States, generally and specifically in violation of the Robinson-Patman Act. There was also a counterclaim setting forth the antitrust claims. The state court judge struck the third affirmative defense and the counterclaim upon the ground that enforcement of the antitrust laws was within the exclusive jurisdiction of the federal courts, and the case proceeded to trial before the judge without a jury.
 
 
 5
 At the trial Price testified that Kornfeld had threatened a group boycott. This was denied by Kornfeld who testified that he had had many such negotiations and had never employed any such tactic.
 
 
 6
 After the conclusion of the trial, the judge incorporated his findings and conclusions in a letter during which he stated one of the questions to be determined by him "2. Was there sufficient and convincing evidence of duress on the part of the plaintiffs to the detriment of the defendants." He included no detailed statement of his factual findings but stated "as the trier of the facts, the Court decides same in favor of the plaintiffs." He directed the preparation and presentation of an order granting judgment in favor of the plaintiffs for $70,000, the face of the note, plus interest and an attorney's fee for 25%.
 
 
 7
 Meanwhile, the plaintiffs here had filed this action in the district court charging a violation of the Clayton Act and the use of "monopolistic and economic threat, coercion and duress" in obtaining the $70,000 note. After the conclusion of state court litigation, the answer was amended to include an assertion that the doctrine of collateral estoppel foreclosed any relitigation of the matter of the alleged threat and resulting duress. Reserving his ruling on the matter until after the verdict, the court then ruled that the doctrine was inapplicable. Noting the absence of specific findings, he reasoned that the state court judge may have found that the threat was made but that it did not constitute duress.
 
 
 8
 As it developed, however, the factual dispute in the federal court was exactly the same as the factual dispute in the state court. Price testified that he had been threatened with a group boycott and executed the note for money he did not owe only under the force of the threat. The testimony for the defense was that no such threat was made. No one suggested that a threat was made but that it was made and understood to have been in jest or for some other reason did not restrict the exhibitor in the free exercise of his will. When the state trial judge stated that he found the facts in the plaintiffs' favor, he must have found that no threat had been made.
 
 
 9
 Under established principles of collateral estoppel, any issue of ultimate fact which was actually litigated and necessarily determined in a prior action cannot again be litigated between the same parties. Yates v. United States, 354 U.S. 298, 335-36, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); United States v. Davis, 460 F.2d 792, 795-96 (4th Cir. 1972). We conclude that the issue of threat vel non was litigated and decided in the state court proceedings and was not open to relitigation in the district court.
 
 
 10
 Nor are we persuaded that application of collateral estoppel here materially compromises Azalea's right to a trial by jury. With respect to the state court trial, that right was waived in the terms of the note, and the rules foreclosing relitigation of factual issues between the same parties serve such important policies that relitigation should not be allowed though the fact finding processes in the first tribunal were unlike those which otherwise would be available in the second.[1]
 
 
 11
 For these reasons we reverse the judgment in favor of the plaintiff theatres for damages under the antitrust laws measured by the amount of the valid state court judgment.
 
 
 12
 REVERSED.
 
 BUTZNER, Circuit Judge (dissenting):
 
 13
 I would affirm the district judge's decision that the state court's judgment did not collaterally estop Azalea from litigating whether the motion picture distributors, acting through Philip Kornfeld, procured a $70,000 note from Azalea by threatening a group boycott.
 
 
 14
 The factual background of this controversy can be briefly stated. The fees Azalea Drive-In Theatre paid to distributors of movies depended on its gate receipts. Kornfeld, an employee of the law firm retained by the distributors, determined to his satisfaction that Azalea had underreported its receipts. He procured a $70,000 note, payable to his firm, from Azalea in satisfaction of the distributors' claims. When Azalea defaulted, the firm brought suit on the note in state court. Azalea defended on the grounds, among others, that the note had been obtained by duress and that it had been procured in violation of the federal antitrust laws. Both of these defenses were based on Azalea's claim that it had signed the note only because Kornfeld had threatened that, otherwise, no distributor would lease movies to Azalea. The state court struck the antitrust defense, holding that enforcement of the antitrust laws was within the exclusive jurisdiction of the federal courts. Without saying expressly why, the state court found against Azalea's state law duress claim.
 
 
 15
 In the meantime Azalea filed a federal action claiming damages for violation of the Sherman Act. The district court declined to hold Azalea estopped from relitigating the question whether Kornfeld threatened a group boycott. On appeal the majority reverses, holding that the state court judgment estops Azalea from proving the threat. My dissent is based on the following considerations.
 
 
 16
 * The distributors rely on the principle that any issue of ultimate fact which was actually litigated and necessarily decided in a prior action cannot be relitigated by the same parties. This is all well and good, but it is only a part of the law of collateral estoppel. Equally important is the point made in Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214 (1877), where the Court emphasized that collateral estoppel does not apply if it appears that in the first action "several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered . . . ."[1] This well settled principle bars the application of the doctrine of collateral estoppel here.
 
 
 17
 In order to prevail upon its plea of duress in the state court, Azalea was obliged to prove (1) that Kornfeld threatened a group boycott, (2) that the threat was unlawful under state law, and (3) that the threat was sufficient to overcome the will of a person of ordinary firmness. See United States v. Huckabee, 83 U.S. (16 Wall.) 414, 431-32, 21 L.Ed. 457 (1873); Bond v. Crawford, 193 Va. 437, 69 S.E.2d 470, 475 (1952); Ford v. Engleman, 118 Va. 89, 96-97, 86 S.E. 852, 855 (1915) (dictim). The state court's judgment and the state judge's letter opinion, however, do not disclose on which of these three elements the judgment rests.[2] So far as this record reveals, the state court could have found that Kornfeld did not make any threat. But the state court also could have believed that Kornfeld threatened a group boycott and that this type of threat was not unlawful under state law. Or the state court could have found that Kornfeld's threat, though unlawful, did not overcome the will of Azalea's officers.
 
 
 18
 A group boycott is a per se violation of the antitrust laws. See Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); United States v. First National Pictures, 282 U.S. 44, 54-55, 51 S.Ct. 45, 75 L.Ed. 151 (1930). Therefore, in its federal action Azalea was required to show only that the distributors, acting through Kornfeld, had threatened a group boycott and that there was a causal relationship between the threat and the harm that Azalea claimed to have suffered. See Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 566, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Osborn v. Sinclair Refining Co., 324 F.2d 566, 571-72 (4th Cir. 1963).
 
 
 19
 In the federal action Azalea was not required to prove that Kornfeld's threat was a violation of state law or that it overcame the will of Azalea's officials. Since the state judgment could have rested on Azalea's failure to prove either of these elements of its plea of duress, under the previously mentioned principle of Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214 (1877), the doctrine of collateral estoppel is inapplicable.
 
 II
 
 20
 Quite apart from the reasons stated in Part I, important policy considerations buttress my conclusion that Azalea should not be estopped by the state court judgment. The first of these relates to differences in the burden of proof. In the state court Azalea had the burden of proving by clear and convincing evidence the three elements of duress mentioned in Part I. See Scott v. Scott, 142 Va. 31, 39-40, 128 S.E. 599, 601 (1925). The state court could have believed that Azalea's evidence of a threat did not satisfy this stringent standard of proof.[3]
 
 
 21
 In contrast, in federal court Azalea had to prove by no more than a preponderance of the evidence that Kornfeld had threatened a group boycott. See Ramsey v. United Mine Workers, 401 U.S. 302, 307-11, 91 S.Ct. 658, 28 L.Ed.2d 64 (1971). Therefore, on the single element common to both cases, namely, the existence of Kornfeld's threat, the difference in the burden of proof between state and federal actions militates against holding that Azalea was collaterally estopped from asserting its antitrust claim. Cf. Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 82 L.Ed. 917 (1938).
 
 III
 
 22
 The promissory note contained a clause waiving trial by jury. In the state court Azalea argued that the waiver should be disregarded because the note had been procured by the threat of a group boycott in violation of the federal antitrust laws and was invalid. The state trial court and the Supreme Court of Virginia rejected this argument. In Azalea Drive-In Theatre v. Sargoy, 215 Va. 714, 214 S.E.2d 131 (1975), the Court pointed out that Azalea's claim of a federal antitrust violation was collateral to the main issue in the motion for judgment on Azalea's note and that the claim was not a viable defense to the action on the note. It observed, however, that the principal case on which it relied, Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 756, 65 S.Ct. 1015, 91 L.Ed. 1219 (1947), did not preclude an independent action for the antitrust violation in a federal court. The Court concluded:
 
 
 23
 "Since the provision in the note waived a jury trial, and we have held that in the present case the alleged violation of the federal antitrust laws is not a viable affirmative defense to this action on the note, we hold that the trial court did not err in denying the defendants' motion for a trial by jury." 214 S.E.2d at 136.
 
 
 24
 In the federal court, Azalea exercised its right to a jury trial. The jury found in its favor.
 
 
 25
 A jury trial was particularly appropriate for the resolution of the federal antitrust claim because, although the law is clear, the factual issues present a sharp conflict. Kornfeld denied threatening a group boycott. The distributors' theory of the case was that Azalea executed the promissory note because it realized it had been caught cheating on its exhibitor's fees. Even though the distributors' auditors could not find a discrepancy in Azalea's books, they insisted that Azalea was understating its admissions. Without going into detail about the auditors' computation, it is worth noting that proof of the underpayments depended on the reliability and accuracy of persons the distributors' lawyer employed to check the number of cars at the drive-in theater.
 
 
 26
 Azalea denied any underpayment and contended that it executed the promissory note solely because of Kornfeld's threatened group boycott. In support of its position that it had paid all the fees that were due, Azalea introduced evidence that the checkers were unreliable. It cited examples of one who consistently arrived well after the movie had begun and of another who had to be removed because he was intoxicated. Some spent most of their time loitering near the concession stand instead of checking the gates.
 
 
 27
 It is therefore apparent that the reliability and accuracy of the checkers was a vital issue in the case. But the application of the doctrine of collateral estoppel has stripped Azalea of the right to a trial by jury on this and other essential issues of its antitrust claim. The propriety of using the state judge's finding of fact made without a jury to estop Azalea in federal court cannot be tested in a vacuum. It must be viewed in the light of the Virginia Supreme Court's ruling that a violation of the federal antitrust laws was not a viable affirmative defense to the note entitling Azalea to a jury. This synergy of state and federal appellate rulings compromises Azalea's seventh amendment right to trial by jury on its antitrust claim. See generally Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va.L.Rev. 1360, 1383-84 & n. 85 (1967).
 
 
 28
 The district judge carefully considered the legal and factual basis of the arguments for and against the application of the doctrine of collateral estoppel in this case. In a well reasoned opinion he concluded that Azalea was not estopped. I would affirm his ruling.
 
 
 
 [1]
 In this connection, the factual question did not turn alone upon the credibility of the checkers sent to the theatre by the defendants. Their testimony was strongly corroborated by objective evidence obtained from the independent concessionaire. If Azalea's books were correct, the records of the concessionaire show that each patron of the theatre spent an extraordinarily large amount of money for refreshments
 
 
 [1]
 Professor Moore states the law as follows:
 "If . . . the judgment might have been based upon one or more of several grounds, but does not expressly rely upon any one of them, then none of them is conclusively established under the doctrine of collateral estoppel, since it is impossible for another court to tell which issue or issues were adjudged by the rendering court." 1B Moore's Federal Practice, P 0.443(4) at 3915.
 See also Restatement of Judgments § 68, comment l (1942).
 
 
 [2]
 The text of the state court's letter opinion reads as follows:
 "There is no need for the Court to state the facts, as these have been adequately stated in the comprehensive briefs filed by counsel for the parties. However, the following interesting points of law are raised by the pleadings and the evidence:
 
 
 [1]
 Was there sufficient consideration to support the contractual agreement?
 
 
 [2]
 Was there sufficient and convincing evidence of duress on the part of the plaintiffs to the detriment of the defendants?
 
 
 [3]
 Was there a binding contract between the parties?
 
 
 [4]
 Was there a counteroffer made by plaintiffs to defendants which has never been accepted by the defendant? Or was the agreement amended only to conform to the prior agreement of the parties?
 "Counsel have cited to the Court an abundance of case law and other authorities. The Court concludes that the authorities cited by the plaintiff are more persuasive, considering the peculiar facts and circumstances of the case. In addition, it seems that to a broad degree the issues of law outlined above turn on issues of fact. As the trier of the facts, the Court decides same in favor of the plaintiffs.
 "Counsel for plaintiffs may present for entry a sketch of an Order granting judgment to plaintiffs in the sum of $70,000.00, plus interest at the rate of 7 percent from February 12, 1971, plus an attorneys' fee of 25 percent, saving unto defendants their exceptions."
 
 
 [3]
 This point is illustrated by the state judge's concept of the issue raised by Azalea's defense of duress: "Was there sufficient and convincing evidence of duress on the part of (Kornfeld) to the detriment of (Azalea)?" (Italics added)