The NASH COUNTY BOARD OF EDUCATION, Appellant,

v.

The BILTMORE COMPANY; Borden, Inc.; Coble Dairy Products Cooperative, Inc.; Pet, Inc.; Pine State Creamery Co.; Kraft, Inc. and Flav-O-Rich, Inc., for itself and as Successor in Interest of United Dairies, Inc., Appellees.

No. 79-1123.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1980.

Decided Jan. 12, 1981.

Rehearing Denied Feb. 18, 1981.

J. Nat Hamrick, Rutherfordton, N. C. (Hamrick & Hamrick, Rutherfordton, N. C., William L. Thorp, Thorp, Anderson & Slifkin, Rocky Mount, N. C., I. T. Valentine, Jr., Valentine, Adams & Lamar, Nashville, N. C., on brief), for appellant.

St. John Barrett, Washington, D. C. (William S. Glading, John F. Sherlock, III, Barnett, Alagia & Carey, Washington, D. C., Jerry W. Amos, Brooks Pierce, McLendon, Humphrey & Leonard, Greensboro, N. C., on brief), for Flav-O-Rich, Inc.

Fred D. Turnage, Washington, D. C. (Cleary, Gottlieb, Steen & Hamilton, New York City, Robert Duesenberg, St. Louis, Mo., Wright T. Dixon, Jr., Bailey, Dixon, Wooten, McDonald & Fountain, Raleigh, N. C., on brief), for Pet, Inc.

George Ward Hendon, Adams, Hendon & Carson, Asheville, N. C., Joseph R. Gladden, Jr., King & Spalding, Atlanta, Ga., on brief for Biltmore Co.

John W. Murchison, Jr., W. T. Covington, Jr., Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., Glenn S. Dennis, New York City, on brief for Borden, Inc.

Joseph H. Leonard, Leonard & Snyder, Lexington, N. C., J. Melville Broughton, Jr., Broughton, Wilkins, Ross & Crampton, Raleigh, N. C., on brief for Coble Dairy Products Cooperative, Inc.

Henry A. Mitchell, Jr., Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N. C., on brief for Pine State Creamery Co.

John R. Jordan, Jordan, Morris & Hoke, Raleigh, N. C., David L. Aufderstrasse, Chadwell, Kayser, Ruggles, McGee & Hastings, Chicago, Ill., Theodore L. Banks, Glenview, Ill., on brief for Kraft, Inc.

Jean A. Benoy, Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for amicus curiae State of N. C.

Before RUSSELL and HALL, Circuit Judges, and CHARLES H. HADEN, II, United States District Judge for the Northern District of West Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

This is an appeal by the plaintiff-appellant The Nash County (N.C.) Board of Education, from a grant of summary judgment in favor of the defendants in an antitrust suit by the plaintiff-appellant against nine dairy companies operating in North Carolina.[1] The basis of the district court's ruling was that, under the principles of *res judicata*, the plaintiff Board was precluded from maintaining the action by reason of a judgment entered in an earlier state antitrust action filed by the Attorney General of North Carolina against the same defendants as are defendants in this action.

The facts on appeal are not in dispute. Following a two year investigation, the Attorney General of North Carolina filed suit in the Superior Court of Wake County, North Carolina, against the nine dairy companies, alleging certain state statutory authorizations for his representation of the claims. He identified the parties he asserted the right to represent as "each public school system in this state which received tax revenue directly or indirectly from the State of North Carolina for the conduct of educational training and programs, which purchases fluid milk to be resold, or given gratuitously, to members of the student body while in registered attendance at such school." The complaint charged that the "defendants have, at various times since February, 1970, joined in agreements, combinations, and conspiracy in restraint of trade in the sale of milk products to the public school systems of North Carolina, which conspiracy and combinations have been in continuous operation since that time to the present date." It further alleged that such conspiracy had the effect that "[p]rice competition in the sale of fluid milk to the public school systems in North Carolina has been restrained and eliminated" and "[p]rices paid for fluid milk purchased by the public schools systems in North Carolina have been at unreasonably high, artificial and non-competitive prices." This conspiracy was violative, according to the Attorney General's complaint, of the North Carolina antitrust laws, which, in the event of a violation, authorized the recovery of treble damages. N.C.Gen.Stat. § 75–16 (1975). The prayer of the complaint sought both

---

1. *Nash County Bd. of Ed. v. Biltmore Co.*, 464 F.Supp. 1027 (E.D.N.C.1978).

injunctive relief and treble damages. Though the complaint included a request for class certification, no class was ever certified and the case was settled with a consent decree entered by the presiding state judge and endorsed by all parties to the litigation.

Shortly after the consent judgment, the plaintiff Board instituted the present suit on October 23, 1975 in the United States district court. In its complaint, the plaintiff identified the subject of its action as the purchase of "fluid milk, cottage cheese and ice cream from one or all of the defendants since February 1, 1970." It brought the action in its own name as one of the North Carolina school districts purchasing such products and sought to represent the class of all such school districts. It alleged the same conspiracy as had the Attorney General in his earlier state suit. The only differences between this action and the earlier action were (1) that this suit was based on the federal antitrust act and the earlier suit had based its legal claim on the state antitrust act and (2) the plaintiff in this later suit sought only treble damages but no injunctive relief. After discovery, the defendants in this later suit moved for summary judgment on the ground of *res judicata*. The district court granted the motion, ruling that the consent decree in the earlier suit barred the action brought by the Board. The Board has appealed, presenting as the sole issue whether the decree in the state action barred under the doctrine of *res judicata* this federal suit. We affirm.

## I

The doctrine of *res judicata*, which provides that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action,"[2] is not a technical rule but a rule of "fundamental and substantial justice, 'of public policy and private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect."[3] It is more than a judicially created doctrine of repose; it is a rule mandated by the full faith and credit clause of the Constitution, Article 4 § 1, and its implementing statute, 28 U.S.C. § 1738,[4] and should be applied accordingly. As applied, the essential elements of the doctrine are generally stated to be (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits. We shall consider in that order these essential requisites for the application of the doctrine in this case.

## II

The plaintiff argues at the outset that a consent decree of judgment such as that entered by the North Carolina court in the earlier action will not support the requirement of a final judgment under either

**2.** *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). *See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5, 99 S.Ct. 645, 649, n. 5, 58 L.Ed.2d 552 (1979); *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

**3.** *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917).

**4.** *American Surety Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932); *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 277 (2d Cir. 1977); *Developments in the Law—Section 1983 and Federalism*, 90 Harv.L. Rev. 1133, 1334 (1977); Currie, *Res Judicata: The Neglected Defense*, 45 U.Chi.L.Rev. 317, 326.

Professor Currie said:
"But federal respect for state court judgments is not, as is occasionally argued, a matter of judicial grace. It is the command of Congress in section 1738 of Title 28: 'The ... judicial proceedings of any court of any ... State, Territory, or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.' 'Every court within the United States,' as one would expect, has been construed to include federal courts."

*res judicata* or collateral estoppel. The district court found otherwise and we agree. As Judge Soper said in *Rector v. Suncrest Lumber Co.*, 52 F.2d 946, 948 (4th Cir. 1931), a consent judgment "is as conclusive and final as to any matter determined as one rendered in invitum after contest and trial [citing authorities]. And such a judgment cannot be impeached collaterally in another proceeding." To the same effect are *Safe Flight Instrument Corp. v. United Control Corp.*, 576 F.2d 1340, 1344 (9th Cir. 1978); *Wallace Clark & Co., Inc. v. Acheson Industries, Inc.*, 532 F.2d 846, 849 (2d Cir.), cert. denied, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800, reh. denied, 427 U.S. 908, 96 S.Ct. 3194, 49 L.Ed.2d 1200 (1976); *Siegel v. National Periodical Publishers, Inc.*, 508 F.2d 909, 913 (2d Cir. 1974) ("... a consent judgment does have res judicata effect ..."); *Beloit Culligan Soft Water Service, Inc. v. Culligan, Inc.*, 274 F.2d 29, 35 (7th Cir. 1959); *Urbino v. Puerto Rico Ry. Light & Power Co.*, 164 F.2d 12, 15 (1st Cir. 1947); *Steyer v. Westvaco Corp.*, 450 F.Supp. 384, 397 (D.Md.1978); *Williams v. Codd*, 459 F.Supp. 804, 811–12 (S.D.N.Y.1978); *Vulcan, Inc. v. Fordees Corp.*, 450 F.Supp. 36, 41–42 (N.D.Ohio 1978); *Hemphill v. Hemphill*, 398 F.Supp. 1134, 1136–37 (N.D.Ga. 1975); *Brunswick Corporation v. Chrysler Corporation*, 287 F.Supp. 776, 777 (E.D.Wis. 1968); *United States v. Radio Corporation of America*, 46 F.Supp. 654, 655, (D.Del. 1942), appeal dis., 318 U.S. 796, 63 S.Ct. 851, 87 L.Ed. 1161 (antitrust consent decree).[5] Of course, as Judge Maris pointed out in *Radio Corporation, supra*, consent decrees

"may be set aside for lack of actual consent to the decrees, as entered, for fraud in their procurement, or for lack of federal jurisdiction." 46 F.Supp. at 656. It was because of a "lack of actual consent" by the party in interest that the consent decree was invalidated in *West v. Bank of Commerce & Trusts*, 167 F.2d 664, 666 (4th Cir. 1948). There is, however, no contention in this case that the judgment was procured by fraud or with lack of "consent" by the Attorney General, who was the party plaintiff in the state action. We have accordingly no difficulty in concluding, as did the district court, that the consent judgment in the state court constituted, for *res judicata* purposes, a final judgment on the merits.[6]

### III

The second requirement for *res judicata* is identity of causes of action. Unfortunately, the authorities do not provide any precise uniform definition of "cause of action" in connection with the application of *res judicata*. A "much broader" definition of "cause of action" in connection with the doctrine of *res judicata*, has developed under modern authorities, *Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464, 469 (3d Cir. 1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951). Under this modern rule, the term, "cause of action," has been given varied application, depending largely on the facts in each case. Thus, in some cases, it has depended for its application on whether the facts in the two

---

5. In *United States v. Radio Corporation*, 46 F.Supp. at 655, Judge Maris put it:

"A consent decree, although based upon an agreement of the parties rather than a finding of facts by the court, is not a mere authentication or recording of that agreement. It is a judicial act (*United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460 [462], 76 L.Ed. 999) and, therefore, involves a determination by the chancellor that it is equitable and in the public interest."

We have assumed that this issue of the *res judicata* effect of a consent judgment in this context would be a matter of federal law. There is authority that, in diversity actions, the issue is one controlled by local state law, *see Graves v. Associated Transport, Inc.*, 344 F.2d

894, 896 (4th Cir. 1965), but this would not alter the result here, since North Carolina law gives *res judicata* effect to consent judgments. *Simpson v. Plyler*, 258 N.C. 390, 397, 128 S.E.2d 843, 848 (1963); *McRary v. McRary*, 228 N.C. 714, 719, 47 S.E.2d 27, 31 (1948).

6. *See, also,* Annotation: *Consent Judgment as Res Judicata*, 97 L.Ed. 1188 at 1191–92 (1953):

"As a general proposition, it is well settled that a valid judgment or decree entered by agreement or consent operates as res judicata to the same extent as a judgment or decree entered after answer and contest, and is binding and conclusive upon the parties, and those in privity with them."

cases are the same;[7] in other cases, on whether the same primary right is asserted.[8] See Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va.L.Rev. 1360, 1361 (1967); 1B Moore's Federal Practice, § 0.410[1] at 1154 (3d ed. 1974). But, irrespective of which test is applied and however broad or narrow the definition, it is manifest that there is identity of causes of action between the action begun by the Attorney General in the state court and that instituted by the plaintiff in the federal court. Both suits deal with the same subject-matter, i. e., the purchase of fluid milk and milk products solely by the various school districts of North Carolina. They involve no other purchases. The two suits allege the same wrongful act, the same illegal price-fixing conspiracy, the same operative facts in support of such conspiracy. The state and federal statutes upon which the two actions are based are identical in language except in the requirement of the federal statute, but not of the state statute, of a showing of interstate commerce. In both cases, the evidence will be identical and the damages recoverable and the relief available the same.

Under established precedent, the identity of two actions, as intimately tied together as these two, will not be destroyed in the res judicata context simply because the two suits are based on different statutes. This was clearly held in Williamson, supra, where one suit was under the Clayton Act and the other under the Sherman Act. Nor will the rule be any different because a state statute is the authority for one action and a federal statute for the other, when the two statutes afford the same right or interdict the same wrong, Mitchell v. National Broadcasting Co., 553 F.2d 265 (2d Cir. 1977).[9] In the cited case, a final state court judgment under a state civil rights statute was held to be res judicata of a later federal court action under § 1981, 42 U.S.C., involving the same parties. 553 F.2d at 266–8. This is equally so when the state action is one at common law and the later federal action is under a federal statute or statutes (§ 1983 and § 1985). This was expressly ruled in Davis v. Towe, 379 F.Supp. 536, 538 (E.D.Va.1974), aff'd without opinion, 4 Cir., 526 F.2d 588 (1975). It has, also, been held that the same rule will apply even though the subsequent federal action is one over which federal courts have exclusive jurisdiction, provided, again of course, the state and federal actions involve the same "operative facts" and the same basic "delict" or wrong. Williamson v. Columbia Gas & Electric Co., 186 F.2d at 467; Connelly v. Balkwill, 174 F.Supp. 49, 60 (N.D.Ohio 1959), aff'd., 6 Cir., 279 F.2d 685 (1960);[10] Kaufman v. Shoenberg, 154

7. This was the test employed in The Haytian Republic, 154 U.S. 118, 125, 14 S.Ct. 992, 994, 38 L.Ed. 930 (1894), (" * * * whether the evidence necessary to prove one cause of action would establish the other"), and accords with the one expressed in Williamson v. Columbia Gas & Electric Corp., supra, 186 F.2d at 469–70, which held there was identity when the same operative facts were present even though there were different theories of recovery.

See, also, McNellis v. First Federal Savings & Loan Assn., 364 F.2d 251, 255 (2d Cir. 1966).

8. The authorities supporting this view are illustrated by Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); see also, Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 295 F.2d 362, 363 (5th Cir. 1961), (" * * * the same alleged breach of duty").

9. Note, State Agencies, State Courts, Res Judicata, and Section 1981: Mitchell v. National Broadcasting Co., 553 F.2d 265 (2d Cir. 1977),

10 Conn.L.Rev. 967 (1978); Note, Employment Discrimination—State Judicial Procedure Forecloses Federal Remedy Under 42 U.S.C. § 1981: Mitchell v. NBC, 31 Rutgers L.Rev. 973 (1979).

While these commentators look with a somewhat jaundiced eye on this and recent related decisions from the same circuit, they recognize that the decision is expressive of a more liberal judicial attitude toward a plea of res judicata and collateral estoppel, prompted as it is by the multiplication of repetitive actions in state and federal courts and by an understandable desire on the part of the courts to checkmate a growing practice of forum shopping.

10. This decision is discussed and its result approved by Professor Moore in 1B, Moore's Federal Practice, § .410[2], n. 38 at 1182–3 (1974 ed.). See Note, The Effect of Prior Nonfederal Proceedings on Exclusive Federal Jurisdiction Over Section 10(b) of the Securities Exchange Act of 1934, 46 N.Y.U.L.Rev. 936, 944–5 (1971).

F.Supp. 64, 67–8 (D.Del.1954). Both *Connelly* and *Kaufman* involved state actions in fraud which were urged as *res judicata* against a federal action charging the same fraud as violative of the Securities and Exchange Act, which gave exclusive jurisdiction to federal courts over any action thereunder. In both cases, the plea of *res judicata* was upheld. In *Williamson* it was held that an antitrust judgment barred on *res judicata* grounds a later conspiracy suit. These cases merely illustrate what was said in *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir. 1968) that, "[i]n regard to the identity of the two lawsuits, it is the substance of the actions that must be compared and not their form." And this rule has been applied where the earlier state action was under a state antitrust statute and the latter under the federal antitrust act, which is this case.

The earliest case to confront the problem whether a prior state action under a state antitrust statute barred under the doctrine of *res judicata* a later federal antitrust suit was *Straus v. American Publishers' Assn.*, 201 F. 306, 310 (2d Cir. 1912), *appeal dis.* 235 U.S. 716, 35 S.Ct. 197, 59 L.Ed. 438. In sustaining the bar, the Court in that case said:

> "The fact that the judgment in the state court depended upon the state statutes and the complaint in this action is founded on the federal statute, which is not within the jurisdiction of the state court, makes no difference. The plaintiffs, having the option to go to either court, chose the state court and their claim, having been there adjudicated, cannot be presented the second time to any other court." [11]

In *Engelhardt v. Bell & Howell Co.*, 327 F.2d 30 (8th Cir. 1964), the situation was identical with that presented by the facts of this case. The plaintiff had filed a prior action in the state court under the state antitrust statute. That case was voluntarily dismissed by the plaintiff, after its removal to the federal court for diversity. That dismissal was held to bar the later federal action under the Sherman Act on principles of *res judicata*. The only difference between *Engelhardt* and this case is the removal of the state action to the federal court. This difference is, however, unimportant; the important fact is that the action dismissed was the action on the state statute, not the federal statute, and it was that dismissal which barred the maintenance of the subsequent federal Sherman Act action. In short, the Court held expressly that the action on the state statute was the same as the action under the Sherman Act and that a voluntary dismissal of that earlier action on the state statute constituted a bar to the maintenance of the later Sherman Act action on the same facts.

In *Woods Exploration & Producing Co., Inc. v. Aluminum Company of America*, 438 F.2d 1286 (5th Cir. 1971), *cert. denied* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736, the Court considered two suits, one under the Texas antitrust statute and the other under the federal antitrust statute. It followed *Engelhardt* and held that the two actions constituted merely "alternative grounds of recovery for the same causes of action" and that "[t]he principle of *res judicata*, enforceable by injunction, would thus preclude relitigation in the state court following this federal judgment if the state and

11. The Sherman Act itself does not prescribe exclusive federal jurisdiction but exclusive jurisdiction has been read into the Act by judicial decisions. *See* Note, *Exclusive Jurisdiction of the Federal Courts in Private Civil Actions*, 70 Harv.L.Rev. 509, 510 & n. 13 (1957):

> "The legislative history of the Sherman Act indicates that exclusive jurisdiction was not intended. Although Congress felt that treble damages constituted a penalty and, as such, were unenforceable in the state courts, it was apparently intended that the injured parties

should be allowed to sue in those courts for compensatory damages (citing the legislative references). The conception that the state courts could not constitutionally award treble damages seems to have been erroneous even at the time the Sherman Act was passed, see *Claflin v. Houseman*, 93 U.S. 130, 137 [23 L.Ed. 833] (1876) (dictum) and clearly is not the law today in view of *Testa v. Katt*, 330 U.S. 386 [67 S.Ct. 810, 91 L.Ed. 967] (1947) * * *."

federal courts involve substantially the same wrongs measured by similar standards of liability so that recovery in the federal suit will have compensated plaintiffs for the total harm suffered." *Id.* at 1314–15. The court found that the two suits asserted "the same wrong," albeit on like statutes of two separate jurisdictions, and granted injunctive relief on the grounds of *res judicata* against the further maintenance of the state suit as to those parts of the federal judgment which were not reversed.

It is true that there are federal antitrust cases which have denied *res judicata* effect to judgments entered in state actions under a state antitrust suit where the state statute did not authorize recovery of treble damages. The rationale of these cases was well stated by the Court in *Hayes v. Solomon*, 597 F.2d 958, 959, 984 (5th Cir. 1979).

"The principle of *res judicata* which prohibits splitting a cause of action applies only to claims 'then capable of recovery' in the first action (citing an authority.) In this case, the first forum, the Texas state court, could not provide the relief sought in the second forum, federal antitrust damages [*i. e.*, treble damages]. We hold, therefore, that this case was not barred by the splitting prohibition."

To the same effect is *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358, 363 (6th Cir. 1967).

In this suit, however, under the state statute, modeled as it is after the federal statute and offering the same right to recover treble damages as the federal statute, there is not the ground for denying *res judicata* effect to the state court judgment stated in *Hayes* and *Cream Top*. There is accordingly no sound reason under *Hayes* and *Cream Top* for denying *res judicata* effect in this case to the earlier state court judgment. The plaintiff, though, contends that *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d Cir.), *reh. denied*, 222 F.2d 195, *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955), which overruled *Straus, supra*, is conclusive against *res judicata* application in this case.

It should be noted at the outset that *Lyons* did not involve a plea of *res judicata* proper but of collateral estoppel. It is, however, proper to assume that the same rule generally would apply with reference to both pleas since collateral estoppel is generally regarded as merely a "branch" or "other prong" of *res judicata*. The issue in *Lyons* grew out of a motion to stay a federal action under the Sherman Act because of a judgment on appeal in a state action between the same parties. The state action had been a suit on a consignment contract account. In that action, the defendant had asserted by way of a defense the invalidity of the consignment contract on antitrust grounds. The state court, in its judgment, found against the antitrust plea and awarded judgment to Westinghouse. Lyons, the defendant in the state action, then filed his antitrust action in the federal court. Westinghouse sought a stay of the federal action pending disposition of the appeal of the state judgment. The district court granted the stay but, on appeal, the Circuit Court vacated the stay, concluding that the state court judgment would not bar on collateral estoppel grounds the federal suit. In reaching that conclusion, the court conceded that, absent antitrust exclusivity, collateral estoppel would apply to "the whole nexus of facts" constituting the antitrust causes of action, thereby "end[ing] the jurisdiction of the district court." 222 F.2d at 188 and 189. Thus, it said that "the grant to the district courts of exclusive jurisdiction over the action for treble damages should be taken to imply an immunity of their decisions from any prejudgment elsewhere; at least on occasions, like those at bar, where the punitive estoppel includes the whole nexus of facts that make up the wrong. The remedy provided is not solely civil; two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose." 222 F.2d at 189.

*Lyons*, however, "has received a mixed response from legal commentators (citing authorities), and a number of courts have refused to follow it," *New York State Teamsters Pension & Retirement Fund v. Pension Benefit Guaranty Corp.*, 591 F.2d

953, 956–7 (D.C.Cir.1979); in fact, the author of *Developments in the Law—Section 1983 and Federalism*, 90 *Harv.L.Rev.* 1133, 1135, n. 20, states that "most later decisions have not followed the *Lyons* result, *see, e. g., Azalea Drive-In Theatre, Inc. v. Hanft*, 540 F.2d 713 (4th Cir. 1976) * * *." [12] This unfavorable response can only be taken as an expression of dissatisfaction with the reasoning behind the decision in *Lyons*. We look now to that reasoning.

The reasoning of the Court in *Lyons* rests on two grounds. The first was the exclusivity of the federal remedy under the Sherman Act; the second was the unavailability in the state action of the treble damage recovery, which the Court regarded as a "crucial" and essential part of the federal right of action. In developing his first reason arising out of the exclusivity of the federal remedy, Judge Hand in *Lyons* seemed to concede that collateral estoppel based on a single fact determination in the state action, if not decisive of the whole issue of federal antitrust violation, was a permissible plea in a later federal antitrust suit between the same parties. But if the plea of collateral estoppel in such a case extended to what Judge Hand called "the whole nexus of facts that make up the wrong" (*i. e.*, the antitrust violation), its recognition would operate in similar fashion to strict *res judicata* and operate to "end the jurisdiction of the district court" thus frustrating the exclusivity of federal jurisdiction. It was this latter situation that Judge Hand in *Lyons* found invalid.[13]

Unquestionably, there is a certain logic in Judge Hand's reasoning. When the plea of collateral estoppel based on a prior state action between the parties embraces all the constituent elements of the federal antitrust claim, its acceptance does in effect defeat any exclusive right in the federal court to decide independently the federal antitrust action. The result is in reality no different than had a plea of *res judicata* been accepted in its effect on the principle of federal exclusivity. But, contrary to Judge Hand's opinion in *Lyons*, later decisions, as well as decisions prior to *Lyons* including one from the United States Supreme Court which Judge Hand unsuccessfully sought to distinguish,[14] have not found the result objectionable. Thus, as the author of the Note in 53 *Va.L.Rev., supra*, at 1369 said that, "In several cases following *Lyons* federal courts, considering the effect of a state-court judgment on a later claim within exclusive jurisdiction of the federal courts, have largely ignored the importance that Judge Hand attached to the maintenance of unfettered exclusive federal jurisdiction." And the Court in *New York State*

12. To the same effect is the Note, *Collateral Estoppel of State Court Judgment in Federal Antitrust Suits*, 51 *Cal.L.Rev.* 955, 964 (1963), where the author states that "for patent cases, Rule 10b-cases, ... [both of which are within exclusive federal jurisdiction] and arguably, for limitation of liability proceedings (were it not for the stipulation exacted from the state court claimant), the prior findings of state courts will be conclusive in subsequent federal proceedings, notwithstanding the grant of exclusive subject matter jurisdiction" to the federal court in such cases.

13. The Court sought to distinguish *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929), by declaring erroneously that the collateral estoppel upheld in that case applied only to "one of the constituent facts that together [made] up the claim," not to "the whole nexus of facts."

14. Actually, the Supreme Court in *Becher v. Contoure Laboratories, Inc.*, 279 U.S. at 388, 49 S.Ct. at 356, had already done exactly what Judge Hand had found invalid in *Lyons*. It held that issues involving patent law, over which federal courts have express exclusive jurisdiction, as decided in a prior state action between the parties should receive finality through collateral estoppel, even though the effect was to foreclose federal determination of exclusive federal claims. 279 U.S. at 390–2, 49 S.Ct. at 357. Judge Hand recognized the applicability of *Becher* and sought to distinguish it but, as the writer in the Note, *Developments—Section 1983*, 90 *Harv.L.Rev.* 1133 at 1335, n. 20, puts it, "[i]t is questionable whether Judge Hand successfully distinguished *Becher v. Contoure Laboratories*, 279 U.S. 388 [49 S.Ct. 356, 73 L.Ed. 752] (1929), where the Supreme Court held that a state court judgment that a patent holder held a patent as a constructive trust for another precluded a federal suit for patent infringement within the exclusive federal jurisdiction, 28 U.S.C. § 1338 (1970)."

*Teamsters, supra,* at 957 made the same point, observing in that connection that our own case of *Azalea* was one of the cases which had not followed *Lyons* on this point. For a recent example of a like application of collateral estoppel, *see, McNally v. Esmark,* 427 F.Supp. 1211, at 1218–22 (N.D.Ill. 1977).[15] If the second federal action, which is within exclusive federal jurisdiction, can thus be barred by collateral estoppel based on a decision in a prior state action, without violating the rule of exclusivity of federal jurisdiction, there can be no logical reason for not holding that such action can be barred by *res judicata* where there is identity of causes of action between the parties, and this is exactly what the court did in *Straus, Engelhardt* and *Woods, supra.*

Judge Hand's second reason is more persuasive; and it seems to have been the main thrust of his opinion. It is the same reason as that stated and applied by the Court in *Hayes* and *Cream Top, supra.* In *Lyons,* the remedy in the state court was found to be different from that available in the federal court because only in the federal court could a recovery of treble damages be had. Assuming that *res judicata* requires that the same right of recovery be available in both suits, this would be a second reason for Judge Hand's conclusion. But this point is unimportant here and raises no bar to the application of *res judicata* in this case, for the North Carolina statute again is identical in the plaintiff's right of recovery under the Sherman Act, if successful: It can secure treble damages on the same terms under both statutes.

There is another ground raised in *Lyons* but dismissed by Judge Hand for giving collateral estoppel effect to the state court action in this case. It would, if upheld, be equally a ground for granting *res judicata* effect to a state judgment in a prior identi-cal state suit, if the ground is deemed sound. The rationale for this ground begins with the fact that the plaintiff in *Lyons* had been the defendant in the state contract suit. Had he filed the state action as plaintiff, the situation would be different, even though Judge Hand in *Lyons,* by way of a dictum thought differently, because, as Professor Moore, in his comment on *Connelly,* referred to in note 10, *supra,* has argued, the plaintiff, by choosing to file the state action on the same cause of action, had voluntarily waived the benefits, if any, of a federal forum and both *res judicata* and collateral estoppel should be available to bar a subsequent federal action on that same cause of action, even though the federal action was within the exclusive jurisdiction of a federal court. This result—at least, so far as collateral estoppel is concerned—was approved by the author of the Note in 53 *Va.L.Rev.,* cited *supra,* at 1383:

> "When this choice-of-forum is present, it is difficult to justify providing immunity from estoppel effect on the ground that a litigant has the privilege to litigate under federal procedure—he has, in effect, waived any such privilege by choosing a state court for the first suit."

Indeed, the good sense of this conclusion is so great that the writer of the Note, *The Collateral Estoppel Effect of Prior State Court Findings in Cases within Exclusive Federal Jurisdiction,* 91 *Harv.L.Rev.* 1281, 1290, who is sympathetic to the *Lyons* view and who is critical of our decision in *Azalea Drive-In Theatre,* concedes:

> "In certain cases, the equities between the parties are so one-sided that the application of traditional collateral estoppel rules is warranted. Such a case arises when a losing state plaintiff, who originally had a choice of bringing suit in

---

**15.** In this case, which was under the Securities Act where there is an express provision for federal exclusivity of remedy as distinguished from a judicially created exclusivity as under the Sherman Act, the Court refused to apply *res judicata* but applied collateral estoppel in the very way Judge Hand in *Lyons* said the Court, in recognition of the exclusivity of federal jurisdiction, could not do: It dismissed the federal antitrust action as barred by collateral estoppel, which worked the same result as a plea of *res judicata.*

For a discussion of *McNally, see* Einhorn & Gray, *The Preclusive Effect of State Court Determinations in Federal Actions under the Securities & Exchange Act of 1934,* 3 *Journal of Corp. Law* 235 (1978).

either state or federal court, subsequently brings a federal claim based on the same transaction as the earlier state suit."

Certainly, this case fits the equities which support the waiver doctrine as presented by Professor Moore. The plaintiff in the state case was the privy of the plaintiff in this later federal suit.[16] The right to recover for an alleged conspiracy to fix prices of fluid milk sold to North Carolina school districts and paid for with funds, in whole or in part, advanced the school districts by the State of North Carolina was first submitted to the North Carolina courts by the plaintiff's privy under a state statute which was for all practical purposes in this connection an exact duplicate of the federal statute. Having brought the suit originally in the state court through its privy, the plaintiff cannot, after judgment in the state court, seek another "bite at the cherry" by filing a like action in federal court. It has, as Professor Moore suggests, voluntarily waived its right to maintain the second suit and *res judicata* and collateral estoppel should be and are available to bar this second suit, when the second suit is, as here, identical with the earlier action.

We accordingly conclude, as did the able district judge, that there was sufficient identity of causes of action between the state and federal actions to support a finding of *res judicata* based on the judgment in the earlier state action.

### IV

■ We now turn to the final requirement for *res judicata, i. e.,* identity of parties, a requirement mandated both at common law and by due process. It may be accepted that under this requirement the doctrine of *res judicata* binds only parties or their privies by a prior judgment. In this case, there is no contention that the plaintiff was a party to the earlier suit begun in the name of the State of North Carolina by its Attorney General, which ended with a consent judgment. The defendants did claim, though, that the plaintiff in this suit was in privity with the plaintiff in that earlier action by the Attorney General and thus is bound by the consent judgment therein. This conclusion, the defendants assert, complies with the common law requirement and satisfies the demands of due process. The district judge sustained the defendants in this position. The plaintiff contests that conclusion of the district judge. The resolution of this contention of the plaintiff turns substantially on the meaning of the term "privity" as applied in the *res judicata* context.

Privity is a term without any "generally prevailing definition * * * which can be automatically applied to all cases involving the doctrine of *res judicata*," *Heaton v. Southern Ry. Co.*, 119 F.Supp. 658, 660 (W.D.S.C.1954). It has been appropriately described as "an elusive concept, without any precise definition of general applicability * * * [which in essence] designates [for *res judicata* purposes] a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved," *Jefferson School of Social Science v. Subversive Act. Com. Bd.*, 331 F.2d 76, 83 (D.C.Cir.1963). Or, as the Court similarly declared in *Aerojet General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975), *cert. denied* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137,[17] the term is sufficiently inclusive "un-

---

16. For the discussion on the status of the two plaintiffs in the state and federal actions, *see* Section IV, set forth later.

17. *See, also,* to the same effect: *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Alderman v. Chrysler Corp.,* 480 F.Supp. 600, 607 (E.D.Va.1979); *Hann v. Carson,* 462 F.Supp. 854, 861 (M.D.Fla. 1978); and Currie, *supra,* at 333–4.

In *Expert Electric,* the Court said at 1233:

"The threshold requirement of identity of parties, qualified by the doctrine of privity, finds its roots in the ancient notion, now supplemented by the due process clause, that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard. Whether such identity is evident is a factual determination of substance, not mere form. *Astron Industrial Associates, Inc. v. Chrysler Motor Corp.,* 405 F.2d 958, 961 (5th Cir. 1968); *Aerojet General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.), *cert.*

der the federal law of res judicata [that] a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." Perhaps, however, the most apt definition of "privity" in this connection was that phrased by Judge Goodrich in his concurring opinion in *Bruszewski v. United States*, 181 F.2d 419 at 423 (3d Cir.) *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950):

> "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."

Applying this definition, we have no difficulty in finding the appellant School District in privity with the Attorney General, in instituting the earlier state court proceeding.

The Attorney General in filing his state action, the judgment in which constituted the basis for the District Court's finding of *res judicata*, declared himself the legal representative, entitled to commence and maintain such suit on behalf of "each public school system in this state which received tax revenue directly or indirectly from the State of North Carolina ... [for the purchase of] fluid milk to be resold, or given gratuitously, to members of the student body while in registered attendance at such school." The plaintiff in this action was concededly such a school district. The authority of the Attorney General to sue as the representative of the school districts of the State, including the plaintiff School District, seems clear both at common law and under the relevant statutory law of

North Carolina. At common law, an attorney general, in the absence of some restriction on his powers by statute or constitution, has complete authority as the representative of the State or any of its political subdivisions "to recover damages [whether under state or federal law] alleged to have been sustained by any such agency or political subdivisions," even though those subdivisions may not have "affirmatively authorized suit." For an excellent discussion of this common law authority of the office of attorney general, *see State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 270 (5th Cir. 1976), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (antitrust suit instituted by the State Attorney General on behalf of State and various political subdivisions); *State of Illinois v. Bristol-Myers Corp.*, 470 F.2d 1276 (D.C.Cir.1972) (antitrust suit on behalf of "all political subdivisions" of State); *Wade v. Mississippi Cooperative Extension Serv.*, 392 F.Supp. 229 (N.D.Miss.1975); *State of Illinois v. Associated Milk Producers, Inc.*, 351 F.Supp. 436 (N.D.Ill.1972) (antitrust suit on behalf, among others, school districts, in purchases of fluid milk).

There is no North Carolina statutory or constitutional provision limiting the authority of the North Carolina Attorney General. In fact, the thrust of the North Carolina statutory law is to the contrary. Thus, those statutes expressly authorize the Attorney General of that State to "represent all State departments, agencies ... or other organized activities ... of the State *which receive support in whole or in part from the State.*" G.S. § 114–2(2). (Italics added) It was this statute on which the Attorney General, in his state action, based his authority to sue on behalf of the various school districts of the State, which had "re-

---

denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation. *Aerojet General Corp. v. Askew, supra* at 719; *Roode v. Michaelian*, 373 F.Supp. 53, 55 (S.D.N.Y. 1974). While often justified by the doctrine of privity, the theory underlying this general

proposition is that the party bound is in substance the one whose interests were at stake in the prior litigation. Therefore, we need first examine, in order to determine whether there was an identity of parties between the state and federal court actions, the degree of representative authority vested in the sponsor JAC to administer the terms of the program."

ceived tax revenues directly or indirectly from the State of North Carolina for ... purchases [of] fluid milk to be resold, or given gratuitously, to members of the student body while in registered attendance at such school." The State action was specifically limited in scope to purchases of "fluid milk" by the school districts with funds supplied "in whole or in part" by the State. It sought treble damages for no other transactions. Those were transactions in which both the State and the school districts such as the plaintiff in this suit were involved financially, in which both had suffered damages if there was an antitrust violation. The state action was unquestionably one the Attorney General, both under his common law authority and under his express authority, had the right to maintain and it was one in which the interests asserted by the Attorney General were identical with those stated by the appellant School District in this federal action.

In that state antitrust suit the Attorney General sought to recover on behalf of the plaintiff and the other school districts of the State overpayments for dairy products occasioned by the appellees' alleged price fixing and market control mechanizations. These are precisely the interests and the right to recover over-payments which the appellant now asserts in the case at bar. The money used to pay for the dairy products in question came, in part at least, from the coffers of state government and the state itself had a direct stake in the litigation.[18] These and these only are the stakes and the interests which the Attorney General sought to represent, i. e., the recovery of past over-payments and equitable protection against future price control schemes by the appellees. We cannot imagine a factual setting more clearly demonstrative of the requisite unity in interest in both suits. The interests of the State in the state action, and the plaintiff School District in the federal action are identical, not merely contextually related.

The appellant suggests that even if the Attorney General possesses the authority to represent state agencies, this authorization is superseded by the North Carolina statutes [19] which empower local school boards to sue and be sued in their own behalf.[20] The statutes relied upon do create a unique right in the school boards, but these statutes do not contradict the Attorney General's right to represent such school districts. When North Carolina General Statutes, §§ 115–27 and 115–31, which are the statutes on which the appellant relies for this

---

**18.** The case at bar should be distinguished from other antitrust suits brought by the state as *parens patriae*. Here state funds are involved and the State of North Carolina, through its Attorney General, is the real party in interest. This action would be subject to close scrutiny if it were of the *parens patriae genre. See, for example, Oklahoma v. A. T. & Santa Fe Ry.*, 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465 (1911); *Kansas v. United States*, 204 U.S. 331, 27 S.Ct. 388, 51 L.Ed. 510 (1907); *Louisiana v. Texas*, 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347 (1900); *N. H. v. Louisiana: N. Y. v. Louisiana*, 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656 (1883). *See also* Malina & Blechman, *Parens Patriae Suits for Treble Damages Under the Antitrust Act*, 65 Nw.U.L.Rev. 193 (1970).

**19.** N.C.Gen.Stat. §§ 115–27 and 115–31.

**20.** This same argument was advanced, and summarily rejected in *Wade v. Mississippi Cooperative Extension Serv.*, 392 F.Supp. at 234, where the Court stated:

"The Board's final, and most serious, contention is that § 213–A of Mississippi's Constitution, inserted in 1944, created the Board as an autonomous agency entrusted with the management and control of Mississippi's senior colleges and universities, and thus invested the Board with the power to employ legal counsel in all cases to which it is a party, independently of the Attorney General. . . . Since § 213–A nowhere expressly grants to the Board authority to engage counsel for the purpose of conducting litigation of statewide interest, the Board's assertion that § 213–A bestows such authority can only be based upon a claim that § 213–A impliedly effects a pro tanto repeal of the plenary authority conferred on the Attorney General by § 173 to represent the State in all litigation of such character. . . .

It is easily perceptible that even if the foregoing statute purports to give the Board authority to retain private legal counsel as professional advisors, no statutory enactment can override the well-established constitutional authority of the Attorney General in this area of strong State concern."

contention, were enacted in 1955 the legislature intended to create a new remedy but it is not to preclude one already in existence. It would seem self-evident that common sense dictates that when an alleged wrong affects governmental units on a state-wide basis, the state should seek redress on their behalf as well as on its own rather than parcelling out the actions among local agencies.[21] However, to ease the administrative burden on the Attorney General's office, when a single local school board is wronged, that unit should individually pursue the remedy it deems appropriate. This is the scheme, we believe, that the North Carolina Legislature had in mind when it adopted §§ 115–27 and 115–31. It necessarily follows that these statutes were not intended to infringe upon the then-existent powers vested in the Attorney General.

The appellant's next line of attack relates to the Attorney General's failure to give notice to the Board of the state antitrust action[22] and in the failure to consult with the Board prior to settlement. While the appellant relies heavily on these omissions, they are of no moment in the instant case. The Attorney General as legal representative of the sovereign and its constitutional subdivisions had both common law and statutory power to bind the State and the subdivisions by his acts. Moreover, it goes without saying that the Attorney General is not limited in his authority to settle or compromise claims by a requirement of consultation with those agencies which might be tangentially affected by a proposed settlement. Here the claims involved both the State and numerous school districts. To impose a requirement that the Attorney General to whom authority was granted

expressly by statute, must consult with and obtain the consent of every school district before he may exercise his statutory authority would not only be a voiding of the Attorney General's statutory authority but, in addition, would be the creation of a cumbersome system leading to almost ludicrous results. By engrafting this restriction upon the Attorney General's authority, the State's legal representative, in attempting to exercise his statutory authority, would be buffeted from hither to yon according to the whims of various local agency directors. Clearly the Attorney General's failure to consult with the Board prior to settlement in no way denigrates the legal significance of the consent decree.

The appellant School District, in addition, argues that the Attorney General never intended or sought to represent the individual School Districts in his action. To support this argument, it emphasizes that in his complaint the Attorney General prayed for class certification and that, if the Attorney General intended his representation to include the rights of the School Districts he would not have prayed for class certification, a prayer which incidentally was never pressed or granted. The difficulty with this argument is that it is completely contradictory of the Attorney General's own allegation of his representation. In the beginning paragraphs of his complaint, the Attorney General clearly identified the parties he was representing. These parties were, as we have already noted, "each public school system in the State . . . ." In the face of this asserted right of representation by the Attorney General of all the State's School Districts, including the appellant

---

**21.** When the claim advanced is statewide in scope and involves geographically diverse agencies of state government, courts have found the Attorney General to be the best representative to bring the action. *State of Illinois v. Associated Milk Producers, Inc.*, 351 F.Supp. 436; *State of Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484 (N.D.Ill.1969); *State of Illinois v. Brunswick Corporation*, 32 F.R.D. 453 (N.D.Ill.1963); *Wade v. Mississippi Cooperative Extension Serv.*, 392 F.Supp. 229.

**22.** This is a somewhat disingenuous argument. The School District knew the Attorney General was investigating, with a view to litigation, the purchases of milk by the school districts. He had sent investigators to this School District and these investigators had reviewed those records. The School District thus knew that the Attorney General contemplated filing his action. Later the Attorney General gave wide publicity to the institution of his action. It imposes too much credibility to suggest that the School District was ignorant of the Attorney General's action.

School District, it was superfluous to certify the school districts as a class, if the Attorney General had a right *in propria persona* to represent the school districts. The Attorney General, as we have seen, had that right both at common law and by statute. It follows that, whether there was class certification or not, the requirement of unity of parties or their privies existed in the two actions under the circumstances involved here.

## CONCLUSION

In summary, the District Court was correct in finding that the action by the appellant School District was barred by the doctrine of *res judicata*. The judgment of the District Court is accordingly

*AFFIRMED.*