383 F.2d 358
 CREAM TOP CREAMERY, Kannapel's Dairy, Inc., Plainview Farms
Dairy, Walnut Grove Dairy and Oscar Ewing, Inc.,
Plaintiffs-Appellants,
v.
DEAN MILK COMPANY, Inc., and Dean Milk Company, Defendants-Appellees.
 No. 17225.
 United States Court of Appeals Sixth Circuit.
 Oct. 17, 1967.
 
 Elmer F. Bennett, Washington, D.C., for appellants, Charles I. Dawson, Richard W. Iler, Bullitt, Dawson & Tarrant, Louisville, Ky., Northcutt Ely, Ely & Duncan, Washington, D.C., on the brief.
 Francis J. McConnell, Chicago, Ill., for appellees, Thomas C. McConnell, John Borst, Jr., McConnell, Freeman, Curtis & McConnell, Chicago, Ill., Frank A. Garlove, Irwin G. Waterman, Morris, Garlove, Waterman & Johnson, Louisville, Ky., on the brief.
 Before PHILLIPS, CELEBREZZE and COMBS, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 This is a private anti-trust suit commenced in 1959 under the treble damage and injunctive provisions of the Clayton Anti-trust Act, 15 U.S.C. 15 & 26 and 28 U.S.C. 1337.
 
 
 2
 Plaintiffs-appellants allege in their complaint that they have been engaged in the business of selling and delivering dairy products at wholesale to purchasers for resale and at retail to individual homes. The amended complaint avers that continuously since about January 1, 1955, there had been a conspiracy existing among the defendants-appellees, Dean Milk Company, an Illinois corporation (Dean of Illinois), its wholly owned subsidiary, Dean Milk Company, Incorporated, a Kentucky corporation (Dean of Kentucky), Great Atlantic & Pacific Tea Company, a New Jersey corporation (A & P), and the Kroger Company, an Ohio corporation (Kroger), which is in restraint of trade and commerce affecting the purchase, distribution and sale of dairy products between the states of Indiana and Kentucky.
 
 
 3
 The second amended complaint alleges that from June 1, 1953, up to the date of filing on February 2, 1965, the Dean Milk Companies (Dean of Kentucky and Dean of Illinois) have discriminated systematically in price among their customers in the sale of dairy products by selling such products of like grade and quality at lower prices to the defendant chain stores than to other purchasers at the same level of trade; that this discrimination substantially lessens competition and tends to create a monopoly in dairy products in the Louisville market area; and that this gives the defendant chain stores an advantage over the smaller operators handling such products.
 
 
 4
 On February 2, 1965, the District Court entered an order dismissing the suit for want of prosecution as to A & P and Kroger, from which there was no appeal. Dean of Illinois and Dean of Kentucky moved for summary judgment on the basis of the prior dismissal with prejudice of a State Court action styled Cherokee Sanitary Milk Co. v. Dean Milk Inc., No. 17,798, in the Jefferson Circuit Court of Louisville, Kentucky.
 
 
 5
 For purposes of identification the present action will be referred to as the 'Cream Top case' and the State Court action as the 'Cherokee case.'
 
 
 6
 The complaint in the Cherokee suit alleged:
 
 
 7
 'All of the defendant's customers in Louisville, Kentucky, and in its vicinity to whom it has sold and is now selling at wholesale its fluid milk in half gallon containers were at all of the times hereinafter mentioned and are now engaged in competition with each of these plaintiffs in the sale of fluid milk in different sized containers including half gallon containers at retail in the City of Louisville and its vicinity; and each of such customers of the defendant are in active competition with each of these plaintiffs in the sale of fluid milk in half gallon containers in that retail market. This fact at all times herein mentioned has been and is now well-known to the defendant and it was and is a part of its unlawful scheme to injure these plaintiffs and to destroy competition against it by making it possible for its customers to undersell these plaintiffs and each of them in the retail market by the unlawful device of selling to its said wholesale customers fluid milk in half gallon containers at less than cost as hereinbefore alleged and thus ultimately to drive each of the plaintiffs out of both the wholesale and retail market for fluid milk in half gallon containers in the City of Louisville and its vicinity.' The amended complaint in that action alleged: 'In addition to the illegal acts charged in our original complaint, the defendant, during all of the times mentioned in the original complaint, has given and is now giving to some of its customers secret rebates, refunds, commissions, unearned discounts, services and privileges not given to all of its customers purchasing on like terms and conditions, by reason of all of which those favored customers of the defendant have been able to purchase packaged milk from defendant at less cost to them than the established price at which defendant professes to sell same to all of its customers purchasing on like terms and conditions.'
 
 
 8
 The District Court held that Dean of Kentucky was 'wholly owned by and its affairs were controlled, managed and directed by Dean of Illinois' and 'that the plaintiffs in this action were parties in name or actively participated in the Cherokee suit.' The motion for summary judgment also alleged that two other cases involving the same subject matter as the Cream Top case had been filed in the Jefferson Circuit Court. Those cases, Hy-Grade Dairies, Inc. v. Dean Milk Co. Inc., No. 338679, and HyGrade Dairies Inc. v. Dean Milk Co. Inc., No. CR 1135, were dismissed without prejudice on motion of plaintiffs.
 
 
 9
 The District Court granted defendants' motion for summary judgment, holding that the dismissal with prejudice of the Cherokee case was tantamount to a trial and final judgment and hence was res judicata in the instant case.
 
 
 10
 We reverse.
 
 
 11
 The only issue involved in this appeal is the effect to be given to a prior dismissal with prejudice of a State Court action in a subsequent anti-trust suit in a Federal District Court.
 
 
 12
 The doctrine of res judicata is that a judgment on the merits in a prior suit involving the same parties or their privies bars a subsequent suit based upon the same cause of action. Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122. 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244.
 
 
 13
 The related doctrine of collateral estoppel is applicable in the following situation:
 
 
 14
 'Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' Cromwell v. County of Sac., 94 U.S. 351, 353, 24 L.Ed. 195.
 
 
 15
 In Lawlor v. National Screen Service, supra, the Supreme Court distinguished the doctrines of res judicata and collateral estoppel as follows:
 
 
 16
 'The basic distinction between the doctrines of res judicata and collateral estoppel, as those terms are used in this case, has frequently been emphasized. Thus, under the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.' 349 U.S. at 326, 75 S.Ct. at 867.
 
 
 17
 Appellees' reliance upon the defenses of res judicata and collateral estoppel is grounded upon the dismissal with prejudice of the State Court action in the Cherokee suit. This Court has held that a dismissal with prejudice constitutes an adjudication of the merits of the controversy as fully and completely as if the order had been entered after trial of the suit. England v. Automatic Canteen Co., 349 F.2d 988 (C.A. 6), cert. denied,383 U.S. 925, 86 S.Ct. 928, 15 L.Ed.2d 845; Smoot v. Fox, 340 F.2d 301 (C.A. 6).
 
 
 18
 With respect to the issue of collateral estoppel, we conclude that Becher v. Contoure Laboratories, Inc., 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752, does not require affirmance of the judgment of the District Court in the present case. That was a case involving the validity of a patent over which exclusive jurisdiction lies in Federal Courts. In that suit the defense of a prior State Court action was interposed and it was held to be a good estoppel, although the consequence was to invalidate the patent, there having been an adjudication of the facts on their merits in the State Court proceedings:
 
 
 19
 Mr. Justice Holmes, speaking for the Court, held:
 
 
 20
 'That decrees validating or invalidating patents belong to the Courts of the United States does not give sacrosanctity to facts that may be conclusive upon the question in issue. A fact is not prevented from being proved in any case in which it is material, by the suggestion that if it is true an important patent is void-- and, although there is language here and there that seems to suggest it, we can see no ground for giving less effect to proof of such a fact than to any other. A party may go into a suit estopped as to a vital fact by a covenant. We see no sufficient reason for denying that he may be equally estopped by a judgment. See Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458. Smith & Egge Mfg. Co. v. Webster, 87 Conn. 74, 85, 86 A. 763.' 279 U.S. at 391-392, 49 S.Ct. at 357.
 
 
 21
 Thus if the first suit is brought in a State Court, this will not mean necessarily that facts there proven can be contested subsequently in a Federal Court action, notwithstanding the exclusive jurisdiction of the Federal Court. However, the doctrine of collateral estoppel is not applicable in the instant case where there were no findings of fact and no adjudication of the case on its merits in the State Court action.
 
 
 22
 Undoubtedly, the 1958 judgment dismissing the Cherokee suit with prejudice bars a later suit on the same cause of action. However, since that judgment was unaccompanied by findings of fact and there was no decision on its merits, the judgment does not bind the parties on any issue which might arise in a cause of action involving alleged continuing wrongful acts subsequent to the dismissal of the Cherokee case. Therefore, no question of collateral estoppel is involved in this suit. Lawlor v. National Screen Service,supra.
 
 
 23
 Further, it is our opinion that the doctrine of res judicata is not applicable in the present case. As the Supreme Court stated in Lawlor,supra, the fact that 'both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct-- for example, an abatable nuisance-- may frequently give rise to more than a single cause of action.' 349 U.S. at 327-328, 75 S.Ct. at 868. Here the amended complaint in the Cream Top case charges that Dean made unlawful sales at discriminatory prices in violation of Section 2(a) of the Robinson-Patman Act, beginning in 1952 and continuing up to the date of the second amended complaint in 1964. At least insofar as the complaint alleges violations since the dismissal of the Cherokee case, the judgment in that case cannot be given the effect of extinguishing a claim which arose subsequent to that judgment. Lawlor v. National Screen Service, supra.
 
 
 24
 Assuming for the sake of argument that the complaints in the Cherokee case, the State Court action, and the Cream Top case, the Federal Court action, allege the same basic wrongs, the decision of the District Court nevertheless cannot stand. Under 15 U.S.C. 15 Congress gave exclusive jurisdiction to the Federal District Court over wrongs committed under the anti-trust acts. The question, as noted by Judge Learned Hand in Lyons v. Westinghouse Electric Corp., 222 F.2d 184, 188 (C.A.2), cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737, is whether Congress:
 
 
 25
 'Only meant that the 'person who shall be injured' must sue in the district court to recover damages; or whether it also meant that the district court must have unfettered power to decide the claim, regardless of the findings of any other courts, even when these were essential to the decision of actions over which their jurisdiction was unquestioned'
 
 
 26
 The basic premise is that a plaintiff must recover all damages arising from given operative facts in a single action. Restatement of Judgments 62. There seems to be some question as to whether this rule is applicable when the first forum lacks the ability to give the relief sought in the second forum. International Railways of Central America v. United Fruit Co., 373 F.2d 408, 417 (C.A. 2); Engelhardt v. Bell & Howell Co., 327 F.2d 30 (C.A. 8); Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.,295 F.2d 362 (C.A. 5); Lyons v. Westinghouse Elec. Corp., supra, 222 F.2d 184 (C.A. 2); cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737; and Williamson v. Columbia Gas & Elec. Corp., 186 F.2d 464 (C.A. 3), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355.
 
 
 27
 Since the Cherokee case did not and could not have involved a claim under the federal anti-trust statutes, the dismissal with prejudice could not have adjudicated Dean's alleged violations of these statutes. 'The utmost effect the prior judgment could have had in this action on any view would thus have been as an estoppel on questions of fact actually litigated; * * *' International Railways of Central America v. United Fruit Co., supra, 373 F.2d 408, 419 (C.A. 2).
 
 
 28
 With respect to the allegations of price discrimination, it is to be emphasized that this is not an action based upon a single wrongful transaction from which continuing damages may have resulted. The wrongful conduct charged in this case is composed of a multitude of separate transactions alleged to have been discriminatory. Each such transaction or group of transactions, if proved to have the effects proscribed by the Robinson-Patman Act, might be held to be a separate legal wrong.[1]
 
 
 29
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 To illustrate: if an action has been brought against the negligent driver of a motor vehicle and thereafter dismissed with prejudice, a second action filed by the same plaintiff against the same driver for negligent driving on another occasion subsequent to the dismissal of the first action would not be barred by res judicata or collateral estoppel