Martin L. **TREPEL, D.O.,** individually and as the successor in interest of **Trepel and Associates, Ltd.,** a Michigan partnership association, **Plaintiff,**

v.

**PONTIAC OSTEOPATHIC HOSPITAL,** Crittenton Hospital, City of Pontiac, City of Pontiac Hospital Building Authority, St. Joseph Mercy Hospital, Jack H. Whitlow, Ivan M. Forbes, Paul W. Trimmer and David A. Kellam, **Defendants.**

Civ. No. 83–CV–4942–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 28, 1984.

James C. Foresman, Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier,

Southfield, Mich., Michael Wischkaemper, Reed, Goldstein & Jenkins-Reed, P.C., Phoenix, Ariz., for plaintiff.

Roger K. Timm, Dykema, Gossett, Spencer, Goodnow & Trigg, Larry J. Saylor, Miller, Canfield, Paddock & Stone, Detroit, Mich., Robert A. Maxwell, Maxwell & Smith, Bloomfield Hills, Mich., for defendants.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT AND DISMISSAL OF ACTION

THORNTON, District Judge.

## I. INTRODUCTION

This case is before the Court on the several defendants' motion for summary judgment. Defendants argue that summary judgment is proper as (1) there is no evidence of the alleged conspiracy and defendants had a legitimate reason for nonrenewal of plaintiffs' contract; (2) the action is barred by the doctrine of res judicata; (3) the action is barred by the running of the statute of limitations; and (4) the plaintiffs have no standing to bring this antitrust claim.

Plaintiff Dr. Trepel was the hospital-based radiologist for Pontiac Osteopathic Hospital (POH). In 1975, after disagreements between the hospital and Dr. Trepel, POH and Dr. Trepel entered into a four-year extension contract for Dr. Trepel's radiological services. As part of this agreement, Dr. Trepel agreed to drop legal charges he had planned to bring against the hospital. Plaintiffs and defendants agree that at the time of entering into the contract it was considered part of a settlement agreement and the terms were for four years and out with no option for renewal. However, Dr. Trepel alleges that during the ensuing four years, Mr. Whitlow of POH represented to the plaintiff that the hospital contract was susceptible to renewal at its expiration. The defendants deny these allegations.

The hospital defendants are all members of the North Oakland County Hospital Steering Committee. Plaintiffs allege that at the committee meetings the defendants conspired to force POH to terminate Dr. Trepel's contract at its four-year expiration date. Plaintiffs further allege that the hospitals are all in competition for available hospital beds and that defendants' motive was to force Dr. Trepel to abandon his support of Huron Valley Hospital (HVH), a new hospital to be constructed in the same geographic area as defendant hospitals. Dr. Trepel was the chief supporter of HVH and HVH would compete with the defendant hospitals for a limited number of available hospital beds.

In August 1979, the POH board informed Dr. Trepel that his contract would not be renewed. As a courtesy, the POH board agreed to give Dr. Trepel (accompanied by his attorney) an appeal hearing at the October and November POH board meetings. The board, however, stayed with its original decision not to renew his contract. This lawsuit is one of a series resulting from the aforementioned actions.

## II. LACK OF EVIDENCE ARGUMENT

Defendants argue that summary judgment should be granted as to plaintiffs' complaint of a conspiracy to restrain trade as there is no evidence of the alleged conspiracy, defendants had a legitimate reason to refuse to renew the contract of Dr. Trepel, and defendants have submitted affidavits which refute the conspiracy allegations. (See Defendants' Exhibit L (Affidavit of Michael R. Schwartz), M (Affidavit of Jack Whitlow), N (Affidavit of James M. Wright), and O (Affidavit of Richard Zunker).

Plaintiffs counter that the affidavit of John P. Morris in conjunction with deposition testimony of Ivan M. Forbes (Forbes deposition, April 30, 1982, pp. 129–131) provides sufficient evidence to survive a motion for summary judgment.

In general courts are reluctant to dispose of antitrust actions by means of motions for summary judgment. In a leading case in this field the United States Supreme Court has stated:

[S]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading

roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice."

*Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

In a later case, *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), the Supreme Court held that mere allegations in the complaint are insufficient to withstand a motion for summary judgment.

Defendants interpret this later case to mean that the denials of a conspiracy contained in their submitted affidavits along with the submitted proofs of refusing to renew the contracts for legitimate business reasons are sufficient to allow summary judgment in this case.

The Sixth Circuit, however, has recently interpreted the effect of *First National Bank* on the earlier *Poller* case:

> The lesson learned from *Poller* and *First National Bank* is that, although the court should treat antitrust plaintiffs leniently in examining their proofs for issues of fact on a summary judgment motion, those proofs must nonetheless provide some factual basis upon which the conspiracy and intent element must be reasonably inferred. Once the defendant has adequately rebutted the plaintiff's allegations by establishing legitimate alternative explanations for its conduct which disprove the inferences the plaintiffs seek to draw, then the plaintiffs must come forward with some "significant probative evidence tending to support the complaint." (Citations and footnotes omitted.)

*Smith v. Northern Michigan Hospitals, Inc.,* 703 F.2d 942, 948 (6th Cir.1983). The Court noted that the Supreme Court had granted summary judgment in *First National Bank* because the plaintiff had produced no evidence of conspiracy and because "the adversity of interests among co-conspirators 'conclusively showed' that the allegations were 'not susceptible' of the interpretation the plaintiff sought." (Citations omitted) *Smith,* 703 F.2d at 947.

In the present case, the defendant hospitals share a common factor, they are hospitals in the same geographic area which must compete for the ability to obtain state approval for additional available hospital beds. As such, the defendant hospitals shared a common interest to assure that the state would not approve available hospital beds for Huron Valley Hospital[1], a new hospital to be constructed and for which Dr. Trepel is the main supporter.

Plaintiffs argue that this backdrop coupled with the evidence of the admission by Mr. Forbes that members of the North Oakland County Hospital Steering Committee almost "boycotted" POH for employing Dr. Trepel provides the requisite "significant probative evidence" in support of their complaint.

Alternatively, plaintiffs argue that summary judgment is inappropriate where there has been insufficient time for discovery. In response, defendants contend that other litigation involving the same parties has afforded plaintiffs ample opportunity for discovery. As plaintiffs correctly note, however, in the prior litigations defendants' objections as to discovery concerning the allegedly conspiratorial meeting (on the ground of lack of relevancy) precluded effective discovery by plaintiffs. Thus without deciding whether the evidence proffered by plaintiffs meets the "significant probative evidence" standard by *First National Bank* and *Smith*[2], this

---

1. Huron Valley Hospital could and did obtain approved hospital beds through a certificate of need furnished by the State Department of Public Health.

2. The Court recognizes and agrees with defendant Sisters of Mary Health Corporation's (SMHC) position that the plaintiffs have as yet failed to produce evidence of a conspiratorial

Court concludes that summary judgment for failure to demonstrate significant probative evidence is inappropriate at this time as plaintiffs have not yet had sufficient opportunity for discovery.

## III. RES JUDICATA ARGUMENT

Defendants argue that principles of res judicata serve to bar plaintiff's present suit. Defendants relied on the case of *Trepel v. Pontiac Osteopathic Hospital,* Civ. No. 79–198827, and consolidated cases, Oakland County Circuit Court, Michigan. In that case, the trial judge granted summary judgment as to Count I of plaintiff's complaint which alleged breach of contract and summary judgment as to plaintiff's counts which alleged tortious interference with contract and interference with prospective advantage. Defendants argue that this summary judgment decision is a final judgment on the merits; that there is substantial identity of parties (addition of defendants not a bar); and that there is an identity of cause of action as plaintiff's antitrust action is a claim which could have been brought in the action alleging tortious interference with contract and business relations. Since the hearing on the motion before this Court, the Michigan Court of Appeals has affirmed in part and reversed in part the state trial court's prior decision. *Trepel v. Pontiac Osteopathic Hospital, et al.,* 135 Mich.App. 361, 354 N.W.2d 341 (1984). In its opinion, the Michigan Court of Appeals reversed the state circuit court's grant of summary judgment with respect to plaintiff's breach of contract claim while it affirmed the trial court's grant of summary judgment with respect to the interference with contract and with prospective advantage. *Id.*

█ Even if this Court were to decide that principles of res judicata could be applied to the federal claims raised in this case, the Court determines that the posture of the state court action is not proper for application of res judicata principles.

First, with the exception of Pontiac Osteopathic Hospital, none of the non-individual defendants charged with antitrust conspir-

acy in the present suit are parties to the state action. As plaintiff now alleges that these various hospitals conspired causing him antitrust injury, he has failed to meet the prerequisite standard of showing a substantial identity of parties. In addition due to the Court of Appeals reinstatement of the breach of contract claim, the state court decision is not yet a final decision. Although the decision of the trial court on the tortious interference claims has been affirmed, the claim for breach of contract (concerning the same subject matter which is present in this federal action) has not yet been determined. Therefore, the doctrine of res judicata cannot properly be applied to the cause of action presently before this Court.

Assuming, arguendo, that defendants had otherwise demonstrated the necessary prerequisites for applying res judicata principles, under current Sixth Circuit law, res judicata cannot be applied to this federal antitrust action.

Defendants concede that in *Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358 (6th Cir.1967), the Sixth Circuit held that res judicata cannot serve as a bar to the federal antitrust suit where the state forum cannot grant the relief sought in the federal forum. The Court noted that as federal courts have exclusive jurisdiction over federal antitrust claims, *id.* 363, plaintiff could have brought only a state antitrust claim in the state court. Furthermore, as the state antitrust action would not allow for treble damages, there was no identity of remedies. The Court concluded that as federal courts have exclusive jurisdiction over federal antitrust claims and as there was no identity of remedies, res judicata did not act to bar the federal action. *Id.*

The defendants concede that under *Cream Top* their argument must fail. Defendants argue, therefore, that because of three recent decisions in other circuits, the Sixth Circuit would now abandon its ruling in *Cream Top* and hold that the state judgment bars the federal antitrust claim. De-

act by SMHC. Plaintiffs, however, have had no opportunity for discovery on this subject.

fendants then propose that this Court should act on the anticipation of the Sixth Circuit reversing itself and hold that this federal antitrust claim is barred by res judicata.

Two of the three circuit cases cited by defendants explicitly acknowledged the validity of *Cream Top* and distinguished their decisions by noting that the state statutes involved allowed for the recovery of treble damages. *Derish v. Mateo-Burlingame Board of Realtors,* 724 F.2d 1347, 1351 (9th Cir.1983); *Nash County Board of Education v. Biltmore Co.,* 640 F.2d 484, 491 (4th Cir.1981). Similarly, *Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1155–56 (7th Cir. 1984) *cert. granted,* —— U.S. ——, 104 S.Ct. 3553, 82 L.Ed.2d 854 (1984) while acknowledging that a difference in remedy "might be an important difference" reasoned that difference was immaterial where the plaintiffs' concern was for *injunctive relief,* a remedy available under both the state and federal laws. Therefore, none of the Circuit cases cited by defendants conflict with the Sixth Circuit's decision in *Cream Top* or the facts of this case where the plaintiffs seek monetary damages.

■ Similarly, defendants' reliance on *Migra v. Warren City School District Board of Education,* —— U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) is inapposite. *Migra* held that a state court judgment could bar petitioner's § 1983 federal court claim. Unlike the present case, however, the Supreme Court noted that the petitioner did not contend that she could not have brought her federal claim in the state court action. *Id.* Accordingly, this Court rejects the defendant's invitation to ignore binding Sixth Circuit precedent and apply res judicata principles to bar the plaintiff's federal antitrust claim.

## IV. STATUTE OF LIMITATIONS ARGUMENT

Defendants also allege that this action is barred by the running of the four-year statute of limitations 15 U.S.C. § 15b. Defendants assert that the statute of limitations accrued in August 1979 when the POH board voted to allow the plaintiff's contract to expire in December 1979, approximately four years and four months before this current lawsuit was filed.

Dr. Trepel's complaint alleges that the defendants conspired to restrain trade and commerce in violation of section one of the Sherman Act, 15 U.S.C. § 1 through (1) eliminating plaintiffs as hospital based radiologists; (2) boycotting and refusing to deal with plaintiffs, and (3) terminating plaintiffs as the hospital-based radiologists at POH in order to prohibit the construction of Huron Valley Hospital. Plaintiffs allege that the defendants met, discussed, agreed to terminate and terminated plaintiffs as the hospital-based radiologists at POH by refusing to renew plaintiff's contract unless Dr. Trepel gave up his support of Huron Valley Hospital. The only evidence of any such meetings at which the alleged conspiracy took place indicates that the suspect meetings were held some time in or prior to June or July, 1979. In Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, p. 7, plaintiffs concede that any alleged discussion predated the contract negotiations of 1979. Thus, the evidence demonstrates that the alleged conspiratal acts took place prior to the August 1979 termination. Furthermore, both plaintiffs and defendants agree that the POH board's decision to terminate Dr. Trepel occurred in August 1979, a time predating the four-year statute of limitations. (Affidavit of John Morris; Affidavit of Ivan M. Forbes).

Plaintiffs argue, however, that the statute of limitations did not accrue in August, 1979 because further negotiations continued through November, 1979 such that no final decision was made until December 1979. Plaintiffs cite minutes of the October 24, 1979 and November 28, 1979 POH board meetings in support of their position that negotiations were continuing. However, in the October 24, 1979 minutes the board explicitly notes that Dr. Trepel's contract was not terminated but simply the decision had been made not to renew it at its expiration. Furthermore, Dr. Trepel's appearance is characterized as a request

for an appeal. Again at the November 28 meeting, even Dr. Trepel's attorney acknowledged that he was being offered a due process appeal hearing, and that the hearing was granted not by right but as a courtesy.

Alternately, plaintiffs argue that under *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) plaintiffs' action did not accrue until after Dr. Trepel had completed this administrative appeal process because until that time plaintiffs' damages were at most "speculative."

Initially, this Court notes that plaintiffs have conceded that any alleged "conspiratal acts" took place prior to the contract negotiations for 1979 and, therefore, necessarily prior to the August 1979 decision not to renew Dr. Trepel's contract. See discussion, *supra*. Strictly speaking, then, as Dr. Trepel has not alleged attempts to obtain employment at any other hospitals, any claim based on an alleged conspiracy to prevent Dr. Trepel from obtaining employment as a hospital-based radiologist accrued with the August 1979 decision and is barred by the statute of limitations.

Plaintiffs apparently contend, however, that the "continuing negotiations" were continuing acts committed in furtherance of the alleged conspiracy. In *Zenith* the Supreme Court held that in a continuing conspiracy a cause of action accrues whenever a plaintiff is injured by an act of the defendants. *Id.* at 338, 91 S.Ct. at 806. The Court also ruled that where future damages are too speculative, the date of accrual is the date the damages are incurred. *Id.* at 339, 91 S.Ct. at 806. However, where future damages are provable as flowing from an act, the date of accrual is the date of the act. *Id.*

In the present case, plaintiffs are in error in their contention that the damages were too speculative as plaintiffs have conceded that they were aware the value of a four-year contract to Dr. Trepel was approximately four million dollars ($4,000,000.00). (Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, p. 9). *Barnosky*

*Oils, Inc. v. Union Oil Co.*, 665 F.2d 74 (6th Cir.1981).

As the damages were provable as flowing from the August 1979 act of the POH board, the action accrued on that date. *Zenith Radio Corp., supra.* Therefore, in their contention that the appeals to the POH board stayed the accrual date, under *Zenith* plaintiffs must prove not only that the courtesy appeal hearings were additional acts in a continuing conspiracy but also that these acts caused further injury to the plaintiffs.

As plaintiffs have conceded that all allegations of conspiracy predaté the negotiations period, and as plaintiffs have no evidence of a conspiracy after August 1979, the only remaining issue is whether the appeal hearings constituted an act as part of a continuing antitrust violation which further injured plaintiff. *Barnosky Oils,* 665 F.2d at 82. As the decision not to renew plaintiff's contract occurred in August 1979, it was at this time that Dr. Trepel initially incurred his damages of loss of future wages. *Griffing v. Lucius O. Crosby Memorial Hospital,* 1984–1 Trade Cas. (CCH) ¶ 65, 854 (S.D.Miss.1984). In the courtesy appeals process, the POH board committed no new acts. The board merely declined to reconsider its initial decision not to renew Trepel's contract. Dr. Trepel incurred no new injury by these hearings as the injury and resulting damages of lost salary occurred in August 1979. Thus, after August 1979 defendants committed no new act which caused additional damages to the plaintiff. *Zenith Radio Corp.,* 401 U.S. at 338–339, 91 S.Ct. at 806; *Barnosky Oils,* 665 F.2d at 81; *see David Orgell, Inc. v. Geary's Stores,* 640 F.2d 936 (9th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981).

In another employment case, the United States Supreme Court addressed the issue of whether the accrual date for a claim under Title VII and 42 U.S.C. § 1981 occurred when a professor was notified of his denial of tenure or at the actual termination date of his employment. *Delaware*

*State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

Although analyzed in the context of a discrimination suit, the Court's reasoning as developed in an employment situation is applicable here. In *Ricks*, the plaintiff was notified in February 1973 that he would not receive a tenured position, although the college agreed to reconsider its decision a year later. In February 1974 the college reiterated its earlier position and formally denied tenure on March 13, 1974. Ricks, however, was granted a one-year termination contract to expire June 30, 1975. Ricks' grievance, filed to appeal this decision, was also denied in September 1984. In April 1975, Ricks filed a discrimination charge with the EEOC which subsequently issued a right to sue letter in 1977. Ricks filed his complaint in September 1977. The Court held that Ricks' discrimination claim accrued at the time of the tenure decision. *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504. The Court held it was the time of the act itself and not the time of the consequences of the act which set the limitations period running. *Id.* The Court rejected plaintiff's arguments that the pendency of the grievance procedure "held out to Ricks the possibility that he would receive tenure if the Board sustained his grievance," *id.* at 260, 101 S.Ct. at 505, or, alternately, tolled the statute. *Id.* at 261, 101 S.Ct. at 505. It characterized the grievance procedure as "a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id.* (Emphasis in original.) It reiterated its position that a grievance procedure "or some other method of collateral review of an employment decision" did not toll the statute. *Id.*

Applying the Court's reasoning to the present case, as the appeals process provided at most a possible remedy for the POH board's prior decision, and not an occasion to influence a decision not yet made, plaintiffs' contention that the possibility the Board would reverse its decision rendered plaintiffs' damages speculative must also be rejected. Similarly, Dr. Trepel's appeal of the Board's decision at the October and November board meetings did not toll the statute.

In substance, plaintiffs' argument asserts that the defendants were "committing a continuing violation by refusing to alter their decision." *Garland v. Shapiro*, 579 F.Supp. 858, 861 (E.D.Mich.1984). As noted by that court:

> If plaintiff were allowed to resurrect his stale ... claim by merely requesting the same relief as was initially denied, and thereby prompting a new refusal, the policies served by the statute of limitations as recognized by the Supreme Court in *Ricks* would be thoroughly frustrated.

*Id.* 861.

Therefore, as plaintiffs filed their claim in November 1983 and as plaintiffs' claim accrued in August 1979 when Dr. Trepel was informed his contract would not be renewed; as plaintiffs' damages at that time were not speculative, and as no conspiratal act causing additional injury occurred within the statutory period, the defendants' motion for summary judgment is granted as plaintiffs' claim is barred by the four-year statute of limitations.

## V. FAILURE TO STATE A CLAIM/LACK OF STANDING ARGUMENT

Defendants also assert that they are entitled to summary judgment because the plaintiffs have not alleged and cannot prove antitrust injury. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Such an argument is more properly categorized as a Rule 12(b)(6) motion to dismiss for failure to state a claim or for lack of standing to bring suit. Accordingly, in analyzing defendants' argument, the allegations in plaintiffs' complaint must be accepted as true. *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1081 (6th Cir.1983).

In their complaint plaintiffs allege a conspiracy in restraint of trade and commerce in violation of 15 U.S.C. § 1 by causing plaintiffs to lose their position as hospital-based radiologists at POH as part of an anti-competitive conspiracy which had as its

ultimate goal the prevention of the existence of Huron Valley Hospital.

At the hearing on this motion, plaintiffs' counsel argued that the refusal to deal with Dr. Trepel "is, alone, an antitrust violation" in that "taking Dr. Trepel out of the market of radiology, hospital-based, is anticompetitive in nature." [Tr. 38]. In addition, plaintiffs argue there is an "overlay" of the anti-trust conspiracy to prevent the formulation of Huron Valley Hospital and its resultant allotment of beds. [Tr. 36–38].

Initially, the Court must decide whether plaintiffs' loss of employment as hospital-based radiologists states an antitrust violation. In *Ace Beer Distributors, Inc. v. Kohn, Inc.*, 318 F.2d 283, 286 (6th Cir.1963) the Sixth Circuit held that a refusal to deal becomes a violation of the Sherman Act "only when it produces an unreasonable restraint of trade, such as price fixing, elimination of competition or the creation of a monopoly."

The Court concluded that the substitution of one beer distributor for another did not constitute an antitrust violation where it did "not eliminate or materially diminish the existing competition of distributors ..." *Id.* 287. In the present case, the substitution of Dr. Trepel with another hospital-based radiologist does not constitute an antitrust violation as it does not cause price-fixing, elimination of competition or a monopoly for radiological services. *See also Griffing v. Lucius O. Crosby Memorial Hospital*, 1984–1 Trade Cas., ¶ 65, 854 (S.D.Miss.1984), where the court dismissed plaintiff's antitrust claim when plaintiff radiologist alleged an illegal tying arrangement when he was substituted by another radiologist as the hospital-based radiologist.

Furthermore, although plaintiff alleges because of the conspiracy he is not required to attempt to obtain employment at the other three defendant hospitals, plaintiff does not explain or allege why he made no attempt to obtain employment at any of the other existing hospitals in the area. *See Griffing.* Accordingly, plaintiffs' loss of employment as hospital-based radiologists did not constitute an antitrust violation.

Thus the only remaining allegation of antitrust violation is plaintiffs' claim that defendants conspired in restraint of trade to keep Huron Valley Hospital out of the market for providing available hospital beds. The next step in the court's analysis, therefore, is to determine whether plaintiffs have standing to bring this antitrust claim.

To support their lack of standing argument, defendants rely primarily on *Brunswick Corp. v. Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) in which the Supreme Court held:

Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations ... would be likely to cause." (Citations omitted.) (Emphasis in original.)

The Court while emphasizing that antitrust laws are for "the protection of *competition* not *competitors*," *id.* 488, 97 S.Ct. 697 (citation omitted) (emphasis in original), would not allow recovery which did not comport with the purpose of the antitrust statute. *Id.* 487, 97 S.Ct. 696.

None of the parties in the present case, however, analyzed the standing issue under the guidelines more recently set forth by the Supreme Court in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) and *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Both of these cases reasserted the basic principle set forth in *Brunswick* that the alleged injury must be of the type the antitrust statute attempted to remedy. *Associated General Contractors*, 459 U.S. at 540, 103 S.Ct. at 910; *McCready*, 457 U.S.

at 479, 102 S.Ct. at 2548. The Sixth Circuit provided an exhaustive analysis and application of the various factors set forth in these cases in *Southaven Land Co., Inc. v. Malone & Hyde, Inc.,* 715 F.2d 1079 (6th Cir.1983).

The *McCready* decision would deny standing where there exists a risk of duplicative recovery or where the injuries complained of are too remote. Whether injuries are too remote is to be determined by an examination of the "physical and economic nexus between the alleged violation and the harm to the plaintiff" and by application of the statutory purpose limitation enunciated in *Brunswick. McCready,* 457 U.S. at 474–78, 102 S.Ct. at 2546–48.

In *Associated General Contractors,* the Court reasoned that a determination of standing would involve an inquiry as to (1) the plaintiff's injury, (2) the defendants' wrongdoing, and (3) the relationship between the two. *Id.* 459 U.S. at 535, 103 S.Ct. at 907.

The factors identified by the Supreme Court in *Associated General Contractors* were summarized by the Sixth Circuit in *Southaven Land Co.,* 715 F.2d at 1085, as:

> *inter alia,* (1) the causal connection between the antitrust violation and harm to the plaintiff and whether the harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation. (Citation omitted.)

Plaintiffs satisfy the first factor as they allege both a causal connection between plaintiffs' loss of employment as hospital-based radiologists and restraint of trade as to Huron Valley Hospital and that the acts

were intentionally done. This factor alone, however, is not sufficient to confer standing upon the plaintiffs. *Associated General Contractors,* 459 U.S. at 537, 103 S.Ct. at 908.

A second factor to consider is the nature of the plaintiff's injury with special focus on whether plaintiffs are competitors or consumers in the relevant market. In the case at bar, plaintiff does not claim standing as a consumer and the competitor against whom the antitrust violation is directed is identified as Huron Valley Hospital and not the plaintiffs. Plaintiffs do not have standing to assert the antitrust injury of Huron Valley Hospital[3]. The injury claimed by plaintiffs is loss of employment as hospital-based radiologists. But this is not an antitrust injury as it is not the type of injury the antitrust statute was designed to remedy. *Associated General Contractors,* 459 U.S. at 540, 103 S.Ct. at 910; *McCready,* 457 U.S. at 478–79, 102 S.Ct. at 2548–49; *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697. Plaintiffs may have an action in tort, but not all tort injuries are actionable in antitrust.

While plaintiffs' losses occurred "by reason of" the alleged unlawful conspiracy, they did not occur "by reason of" that which made the conspiracy an antitrust violation, *paraphrasing, Brunswick* 429 U.S. at 488, 97 S.Ct. at 697. Therefore, the plaintiffs have failed to satisfy the second factor.

Next the Court considers whether the injury is direct or indirect or derivative in nature. Plaintiff alleges that he lost his employment as a direct result of the coercive conspiratoral acts of the defendants in an attempt to boycott plaintiff. Thus this Court is faced with a situation as yet undecided by the Supreme Court whereby it must decide whether a direct victim who suffers injury unrelated to antitrust policy has standing to bring an antitrust action.

---

**3.** Plaintiffs do, however, present their "overlay" argument in an attempt to wrap themselves within the alleged injury to Huron Valley Hospital. This type of argument was rejected by the

Sixth Circuit in *Meyer Goldberg, Inc. of Lorain v. Goldberg,* 717 F.2d 290 (6th Cir.1983) in which the Court denied standing in an antitrust action to the sole shareholders of grocery stores.

**1494**

*Associated General Contractors,* 459 U.S. at 540–41 n. 44, 103 S.Ct. at 910 n. 44.

Another factor to evaluate is whether there are more direct victims of the antitrust violation who have standing. In the present situation, the Sixth Circuit has already determined that Huron Valley Hospital is a direct victim and therefore has standing to bring an antitrust action alleging conspiracy in restraint of trade. *Huron Valley Hospital, Inc. v. City of Pontiac, et al.,* 666 F.2d 1029 (6th Cir.1981). Thus, the possibility does not exist that denying plaintiffs' standing is "likely to leave a significant antitrust violation undetected or unremedied." *Associated General Contractors,* 459 U.S. at 542, 103 S.Ct. at 911. The pendency of the hospital's action "diminishes the justification for allowing a more remote party" to have standing. *Id.*

Also, because plaintiffs' injuries are not antitrust in nature, it increases the danger of multiple liability and the potential for duplicative recovery and complex apportionment of damages. *Id.* at 545, 103 S.Ct. at 912.

Finally, the Court notes that the plaintiffs' injuries may be addressed in state common law actions in contract and tort. *Associated General Contractors,* 459 U.S. at 543, 103 S.Ct. at 911; *Southaven Land Co.,* 715 F.2d at 1088. Indeed, it appears plaintiffs are already availing themselves of these opportunities. *See* discussion *supra,* p. 1488.

 After an analysis and balancing of the relevant factors set forth in *McCready, Associated General Contractors* and *Southaven Land Co.,* this Court determines that plaintiffs do not have standing to bring this antitrust action. Accordingly, the Court treats defendants' summary judgment motion as a Rule 12(b)(6) motion to dismiss and grants defendants' motion to dismiss for lack of standing and failure to state a claim upon which relief can be granted and the action is hereby DISMISSED.

For all the reasons discussed above, summary judgment is GRANTED to the defendants and the action is DISMISSED. No costs are allowed.

IT IS SO ORDERED.