780 F.2d 1023
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
MARTIN L. TREPEL, D.O., Individually and as the successor in
interest of Trepel and Associates, LTD., a
Michigan Partnership Association,
Plaintiff-Appellant,
v.
PONTIAC OSTEOPATHIC HOSPITAL, a Michigan Non-Profit
Corporation; CRITTENTON HOSPITAL; CITY OF PONTIAC; CITY OF
PONTIAC HOSPITAL BUILDING AUTHORITY; SISTERS OF MERCY
CORPORATION; JACK H. WHITLOW; IVAN M. FORBES; PAUL W.
TRIMMER; and DAVID A. KELLAM, Defendants-Appellees.
 85-1089
 United States Court of Appeals, Sixth Circuit.
 11/25/85
 
 AFFIRMED
 E.D.Mich., 599 F.Supp. 1484
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: LIVELY, Chief Judge; MERRITT and CONTIE, Circuit Judges
 MERRITT, Circuit Judge.
 
 
 1
 The appellant, Dr. Trepel, appeals the District Court's order granting appellees' motion for summary judgment. Because we are of the opinion that the statute of limitations on appellant's claim had run before he filed this action, we affirm the District Court.
 
 I.
 
 2
 In 1959, Trepel was employed as a radiologist by appellee Pontiac Osteopathic Hospital (POH). Trepel's contract with POH was extended in 1966 and 1975. The 1975 extension of the contract was for four years. During those four years. Trepel was involved in the efforts of Huron Valley Hospital, Inc. to obtain the governmental authorization necessary to construct a hospital in the same geographic market as POH.
 
 
 3
 According to Trepel's complaint, sometime in 1979, POH conspired with officials from other hospitals in the area to eliminate the proposed Huron Valley Hospital as a competitor. Part of the conspiracy was to eliminate Trepel's support of the proposed hospital by 'boycotting' Trepel and refusing to renew his contract when it expired.
 
 
 4
 On August 29, 1979, POH informed Trepel that his contract would not be renewed when it expired on December 31, 1979. On October 24, 1979 and November 28, 1979, Trepel met with POH's board. There is some dispute as to the proper characterization of these meetings. POH sees the meetings as a courtesy granted to Trepel--giving him a chance to discuss the decision not to renew his contract even though under POH's bylaws he was not entitled to any hearing. Trepel would characterize the meetings as an indication that POH's decision not to renew was not yet final and did not become final until after the November 28 meeting. These meetings with the board produced no change in POH's decision, and Trepel's contract was not renewed when it expired at the end of the year.
 
 
 5
 Trepel filed this action on November 14, 1983. He alleged a violation of section one of the Sherman Act, 15 U.S.C. Sec. 1 (1982). In January 1984, the appellees moved for summary judgment, and on December 28, 1984, the District Court granted their motion, ruling that Trepel's action was not brought within the Sherman Act's four-year statute of limitations, 15 U.S.C. Sec. 15b, and that Trepel had no standing to assert his antitrust claim (or, alternatively, that he had failed to state an antitrust claim upon which relief could be granted).
 
 II.
 
 6
 The District Court ruled that the defendants were entitled to judgment as a matter of law because 15 U.S.C. Sec. 15b's four-year statute of limitations had run on Trepel's Sherman Act claim before this action was filed on November 14, 1983. The District Court pointed out that Trepel's claim was that the appellees had conspired to restrain trade in that they had allegedly met, discussed, and agreed not to renew Trepel's contract unless Trepel gave up his support of Huron Valley Hospital. Trepel admitted in his brief in opposition to the motion for summary judgment that such meeting and discussion occurred before August 28, 1979 (more than four years before Trepel filed his action), when POH informed Trepel that his contract would not be renewed. The District Court ruled that Trepel's cause of action accrued, and the statute of limitations began to run, on the day when POH decided, and gave notice to Trepel, that his contract would be allowed to expire.
 
 
 7
 The District Court relied on Delaware State College v. Ricks, 449 U.S. 250 (1980). In Ricks a college professor sued under Title VII after he was denied tenure. The Supreme Court held that the professor's cause of action accrued when he learned of the college's decision to deny him tenure, not when his contract with the college expired and not when the college's board of trustees denied his grievance. Applying the Ricks rationale to the present case, Trepel's cause of action accrued when he learned of POH's decision not to renew his contract. We see no reason why the Ricks rationale on the timing of a cause of action's accrual should not be applied to the case at bar, especially since in this case, like Ricks, the cause of action arises from an alleged wrongful nonrenewal of Trepel's employment contract.
 
 A. Issue of Material Fact
 
 8
 Trepel argues that summary judgment should not have been granted because a genuine issue of fact exists as to when POH's decision not to renew the contract became final. He would characterize POH's decision as merely tentative or recommended in August 1977, and he asserts that the decision did not become firm and definite until November 1979, after Trepel's meetings with the POH board. In essence, Trepel's argument is that the decision to allow the contract to expire was not 'made' until November 1979.
 
 
 9
 As support for his argument, Trepel advances certain statements made by members of the POH board at the October and November meetings and Trepel's own statement, from his deposition in another case, that he did not consider the decision final until December 1979.
 
 
 10
 The statements of POH board members, even when viewed in the light most favorable to Trepel, do not indicate that POH's decision as communicated to Trepel was in any way tentative or preliminary. When viewed in context, the statements merely indicate that the board was giving some consideration to reversing its earlier decision. The statements do not support Trepel's argument that POH's earlier decision was not final or definite when announced in August 1977. Trepel's statement that he did not consider the decision to be final until December is not indicative of the status of POH's August decision not to renew the contract; Trepel's belief that the decision was tentative did not make it so.
 
 
 11
 In Ricks, the Supreme Court addressed the contention that the decision to deny tenure was not complete until Ricks' grievance was denied by the college's board of trustees. The Court determined that the decision was final when Ricks was initially informed that he would be denied tenure. The Court characterized the formal grievance procedure, subsequent to the decision, as remedial in nature rather than as an indication that the decision had only been tentative. In the case at bar, the fact that no formal procedure existed for appealing POH's decision supports the conclusion that the decision was final when announced. Indeed, the facts of this case may be seen as stronger support for the conclusion that the decision was final than were the facts in Ricks, where the existence of a formal grievance procedure might have indicated that the decision was incomplete or preliminary until confirmed by denial of the grievance.
 
 
 12
 We conclude that the District Court correctly determined that no genuine issue of fact existed as to whether POH's August 1979 decision not to renew Trepel's contract was a final and firm decision. In August 1979, POH's decision to let the contract expire was a completed, final decision. While it may have been subject to subsequent change, it was at that time final and permanent in the same sense that a court's judgment is final but subject to reversal or modification on appeal.
 
 B. Continuing Conspiracy
 
 13
 Trepel argues that even if POH's decision was final, the appellees' conduct amounted to a continuing conspiracy to restrain trade. That is, even if no genuine issue of material fact existed, the defendants were not entitled to judgment on the statute of limitations issue as a matter of law because Trepel's cause of action accrued from the last date he was injured by the defendants' continuing conspiracy. In Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971), the Supreme Court held that 'in the context of a continuing conspiracy to violate the antitrust laws, . . . each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and . . ., as to those damages, the statute of limitations runs from the commission of the act.' 401 U.S. at 338. Trepel argues that when POH allowed his contract to expire without renewal on December 31, 1979, he was injured by an act of POH's continuing conspiracy with the other appellees and that, therefore, his cause of action for the damages resulting from the nonrenewal of the contract accrued on December 31, 1979.
 
 
 14
 The current state of the law on continuing antitrust conspiracies in the Sixth Circuit is found in Barnosky Oils, Inc. v. Union Oil Co. of California, 665 F.2d 74 (6th Cir. 1981). In Barnosky, Judge Martin distinguished between an injury resulting from some act actually occurring during the limitations period, on which the statute will not have run, and an injury resulting from the 'abatable but unabated inertial consequences of some pre-limitation action.' 665 F.2d at 81. Appellees argue that expiration of Trepel's contract in December 1979 was merely the unabated inertial consequence of POH's prelimitations period decision not to renew the contract. Trepel points out that in Barnosky, a case involving an alleged refusal to deal in violation of the antitrust laws, the court emphasized that the plaintiff had not asked the defendant to allow transactions prohibited by the defendant's contract which embodied the refusal to deal. Trepel would distinguish Barnosky on the ground that in the present case he requested at the board meetings in October and November that his contract be renewed. He concludes that his cause of action should be deemed to have accrued from, at the earliest, the conclusion of the board's November meeting.
 
 
 15
 Based on the conclusion that, as discussed above, POH's decision to let Trepel's contract expire was made in August 1979, we believe that the expiration of the contract was simply the consequence of this earlier decision. It cannot fairly be said that POH's refusal to change its mind on the contract renewal question was the act that caused Trepel's injury. Accordingly, we conclude that Trepel's contention that his injury stems from a continuing conspiracy is without merit.
 
 C. Speculative Injury
 
 16
 Trepel's final argument is that his cause of action could not have accrued in August 1979, at the time of POH's initial decision not to renew the contract, because at that time his damages were speculative. In Zenith Radio the Court stated:
 
 
 17
 it is hornbook law, in antitrust actions as in others, that even if injury and a cause of action have accrued as of a certain date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable.
 
 
 18
 In antitrust and treble-damage actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered. In these instances, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted.
 
 
 19
 401 U.S. at 339 (citations omitted).
 
 
 20
 Trepel apparently contends that until he met with POH's board in October and November to attempt to effect a change in POH's decision, it was uncertain that his contract would be allowed to expire and that therefore the future accrual of his injury was speculative. The District Court rejected Trepel's argument because it found that at the time Trepel was told of POH's decision the decision was final and his future damages were provable. To this effect, see also Barnosky, 665 F.2d at 82-83. We agree with the District Court's conclusion.
 
 III.
 
 21
 We hold that the District Court did not err in granting appellees' motion for summary judgment on the statute of limitations question. Accordingly, the District Court's order is affirmed.
 
 
 22
 Because we conclude that the statute of limitations had run before Trepel filed his action, we deline to rule on the District Court's opinion that Trepel lacks standing to bring an antitrust action.